GROOM *v.* MARGULIES t/a Marko Distributors, Inc.

[No. 368, September Term, 1969.]

*Decided May 5, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SMITH and DIGGES, JJ.

*Ronald G. Kane* and *B. George Ballman,* with whom were *Staley, Prescott & Ballman* on the brief, for appellant.

*Edward L. Goldman,* with whom was *Harvey A. Jacobs* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

This appeal involves the principal question of whether or not the Circuit Court for Montgomery County obtained personal jurisdiction over the appellee, Herbert Margulies T/A Marko Distributors, Inc. (Margulies) by service under the Maryland "Long Arm" Statute, Code (1957), Art. 75, § 96, as amended. There is also a question of whether or not the Affidavit of Service of the appellant, Horace C. Groom, Jr. (Groom) sufficiently complied with the provisions of Maryland Rule 107 a 2.

Groom, on May 28, 1968, filed a declaration, copy of account, affidavit, motion for summary judgment and no-

tice in the Circuit Court for Montgomery County against "Herbert Margulies, t/a Marko Distributors, Inc." The declaration alleged that on May 16, 1966, Groom entered into an agreement with Margulies, the defendant, whereby it was agreed that the defendant provide laundry equipment including washers and dryers and to deliver a five year lease for the housing of this equipment in the Alpine Apartments in Oxon Hill, Maryland for the total price of $17,304.00; that Groom paid the defendant $10,-000.00 on account of the equipment and lease as required by the agreement, but the defendant failed and refused "to perform *his* obligations under said Agreement" notwithstanding Groom's readiness, willingness and ability to pay the remaining balance of $7,304.00 and to perform all of his [Groom's] obligations under the agreement upon like performance by the defendant; that on or about November 15, 1966, Groom seeking performance of the defendant and being ready to tender the balance due, discovered that the defendant "had left the state of Maryland, wholly failing, neglecting and refusing to perform" pursuant to the agreement and no part of the $10,-000.00 had been returned or repaid to Groom; that because of the failure of the defendant to complete performance of the contract and the failure to return the monies advanced, the defendant became indebted to Groom for $10,000.00 and, although "demand has been made upon *him* to pay the said sum," the defendant has failed, refused and neglected to pay it, or any part of it, and neither has anyone paid it or any part of it so that there is due and owing from the defendant to Groom, the plaintiff, the sum of $10,000.00 with interest and costs. (Emphasis supplied.) Groom then set out five common counts and claimed $10,000.00 with interest and costs.

The itemized statement of account filed with the declaration indicates four payments: on May 16, 1966, $1,-000.00; on May 24, 1966, $2,000.00; on August 1, 1966, $6,000.00 and also on August 1, 1966, $1,000.00, a total of $10,000.00. It recited that the $10,000.00 total was for "Monies expended and paid to Herbert Margulies."

The motion for summary judgment is in the usual form and recited that "the Defendant has no defense to the Plaintiff's claim, and there is no genuine dispute between the parties as to any material facts, and that the Plaintiff is entitled to judgment as a matter of law." The supporting affidavit of Groom recites that he is competent to testify and had personal knowledge of the matters set forth in the affidavit. It recites in paragraph 2 that on or about May 16, 1966, Groom, the plaintiff:

> "entered into a certain agreement with the Defendant wherein it was agreed that the Defendant, HERBERT MARGULIES, t/a MARKO DISTRIBUTORS, INC., would deliver 34 General Electric Washers and 17 Huebsch Dryers together with a lease in the Alpine Apartments in Oxon Hill, Maryland to the Plaintiff for a total consideration price of $17,304.00."

The affidavit then continues:

> "3. That the Plaintiff exclusively dealt with HERBERT MARGULIES and delivered payment to him in the amount of $10,000 but that the said Defendant did wholly fail and refuses to perform the contract obligations as he had agreed to do, and the said Plaintiff did pay to the Defendant the sum of $10,000.00 as agreed; that the Defendant is therefore indebted unto the Plaintiff in the full and true sum of $10,-000.00 without deduction and over and above all discounts, set offs and other just grounds of defense, beside interest and costs."

Also on May 28, 1968, counsel for Groom filed a "Line" requesting the Clerk to receive and file the declaration and to "issue a summons in said case to the Defendant, Herbert Margulies, t/a Marko Distributors, Inc., who is a resident of the State of New Jersey at 312 Monmouth Drive, Cherry Hill, New Jersey, under Article 95, Section 94 et seq. and to be served and returned to this Court

under Affidavit of service as required pursuant to Maryland Rules 107 a 2."

Thereafter counsel for Groom mailed a copy of the declaration, itemized statement of account, line to the clerk, affidavit and motion for summary judgment by registered mail with a return receipt requested and delivery restricted to the addressee only, to Margulies at his New Jersey address. On August 5, 1968, counsel for Groom executed an affidavit reciting the mailing of the papers mentioned by registered mail, with the request and restriction mentioned to "Herbert Margulies, the Defendant, at 312 Monmouth Drive, Cherry Hill, New Jersey, where the Defendant was outside of the State of Maryland warranting such service and that the aforesaid copies were mailed to the Defendant on June 5, 1968, and that they were in fact received by the Defendant on June 7, 1968, as evidenced by his signature on the original return receipt which is attached to this affidavit pursuant to Maryland Rules 107 (a) (2)." The attached return receipt indicates receipt on June 7, 1968, and is signed "Herbert Margulies." The affidavit and attached return receipt were filed in the case on August 6, 1968.

On August 23, 1968, the declaration, itemized statement of account, and affidavit in support of the summary judgment were presented to Judge Pugh, who on that date passed an order which recited consideration of the papers mentioned and that Herbert Margulies had been duly summoned and notified to answer, but had failed to answer within the time allowed. The order provided for the entry of summary judgment as prayed in favor of Groom against Margulies. The order of August 23 set the matter for ex parte proof before the Court to establish the amount of damages and costs sustained by the Plaintiff.

Thereafter, on November 15, 1968, a hearing was held, ex parte, before Judge Moore. At this hearing, Groom appeared with counsel and testimony was taken. Four checks were entered as exhibits together with the original agreement dated May 20, 1966, and the lease dated

June 1, 1966. The first two checks dated May 16 and 24, 1966, for $1,000.00 and $2,000.00 respectively were made payable to "Marko Distributors Inc." in Groom's handwriting; the next two checks both dated August 1 for $6,000.00 and $1,000.00 respectively were made payable to Marko Distributors in Groom's handwriting, the letters "Inc" being added in another's handwriting. It is conceded, however, that the letters "Inc" were added prior to deposit. The endorsement on all of the checks is the same "For deposit only, Marko Distributors, Inc., 7411 Riggs Road, Hyattsville, Md." The last check for $1,000.00 in addition has the endorsement "Herbert Margulies." The agreement is on a printed form headed with the words "Marko Distributors, Inc., 7411 Riggs Road, Hyattsville, Maryland" and is signed "Herbert Margulies" after the printed words "Sales Manager's Approval." The lease of June 1, 1966, recites that it is between Marko Distributors, Inc., as lessor, and Groom, as lessee, and is signed by the lessor as follows:

"Herbert Margulies     Seal
(MARKO DISTRIBUTORS, INC.)"

After considering the testimony and a supporting memorandum of counsel for Groom, Judge Moore on February 26, 1969, passed an order (filed February 27, 1969) entering judgment against Margulies, the Defendant, for "$10,000.00 plus 6% interest from August 1, 1966, of $1,543.56 for a total of $11,543.56 plus costs."

On June 26, 1969, the defendant Margulies filed a motion to set aside the judgment of February 27, 1969. This motion is as follows:

"Herbert Margulies, Defendant, by Harvey A. Jacobs, his Attorney, moves the Court to set aside its default judgment entered in this case on February 27, 1969 because:

"1. Such judgment was obtained as a result of fraud, mistake and/or irregularity and defendant has acted in good faith and due diligence

under the circumstances and has a meritorious defense, are [sic] of which is set forth in more particularity in the attached affidavits of Defendant Margulies and Mr. Harry Foucks, which are prayed to be read as a part hereof.

"2. The Defendant has not been properly served with process and is not now, and was not at the time the action was brought, a resident of the State of Maryland or transacting business within said State."

The affidavits mentioned in the motion to set aside the judgment were in relevant part as follows:

(a) *The Affidavit of Margulies:*

"HERBERT MARGULIES, being duly sworn, deposes and says:

"1. I am a resident of the State of New Jersey and reside at 312 Monmouth Drive, Cherry Hill, New Jersey. In June, 1968, I received a certified letter containing a Declaration in the above-captioned case. My intention at the time of receipt was to forward same to my attorney for appropriate action. On June 19, 1968, the master bedroom of my home in New Jersey was completely destroyed and there was smoke and water damage throughout the house causing my entire family to move to temporary quarters for a period of eleven (11) weeks. In the resulting confusion the papers were lost or destroyed and the matter was put out of my mind until May 27, 1969 when I was served in a suit brought in the Superior Court of New Jersey, Law Division, Camden County. This suit was brought to enforce a default judgment taken in the above-captioned case. I immediately forwarded these papers to my attorney for appropriate action. Prior to May 27, 1969, I was unaware of the default judgment.

"2. In May of 1966, acting as agent for Marko

Distributors, Inc., I entered into an agreement with plaintiff, Horace C. Groom, Jr. This agreement and all subsequent transactions with Mr. Groom were executed in the name of and on behalf of the Corporation and I did not enter into same in my own name."

(b) *The Affidavit of Foulks*

"Harry Foulks, being duly sworn, deposes and says:

"(1) I am Harry Foulks, Chief of Woodland Fire Co. Cherry Hill New Jersey. On or about 6/19/68 I certify there was a fire at the home of Herbert Margulies 312 Monmouth Dr. Cherry Hill, N.J."

Groom filed a motion ne recipiatur on July 9, 1969. It averred that the lower court should not receive the motion to set aside the judgment reciting the prior proceedings; that the judgment was not obtained by fraud, mistake or irregularities and that the defendant "did not act in good faith or in due diligence; that the defendant had ample opportunity to comply with the Maryland Rules for defense of law actions but took no action or response to the law suit until more than one year had passed since its filing and service on the defendant."

A hearing was held before Judge Moore on August 1, 1969, upon the motion to set aside the judgment and the motion ne recipiatur. On November 7, 1969, Judge Moore filed his opinion indicating that in his opinion the lower court lacked jurisdiction to enter the judgment of February 27, 1969, and that the affidavit of service did not comply with Maryland Rule 107 a 2. On the same day the lower court passed an order vacating that judgment. Judge Moore did not reach the question of whether or not the judgment has been obtained as a result of fraud, mistake or irregularity. A timely appeal was taken by Groom from the order of November 7, 1969, vacating the judgment.

### 1.

The Maryland "Long Arm" Statute enacted by Chap. 95 of the Laws of 1964 as amended by Chap. 749 of the Laws of 1965 and Chap. 707 of the Laws of 1968, appearing as Code (1957, 1969 Repl. Vol.) Art. 75, §§ 94-100, provides in relevant part:

"(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's

"(1) Transacting any business in this State;
* * *

"(5) Having an interest in, using, or possessing real property in this State; . . . ."

Sec. 97 of Art. 75, provides:

"When the exercise of personal jurisdiction is authorized by this subtitle, service may be made outside this State."

Sec. 100 of Art. 75 provides:

"Service of process upon any person may, in addition to any other method allowed by law, be made in accordance with Chapter 100 of the Maryland Rules of Procedure or in such other manner as may hereafter be established by rule of the Court of Appeals of Maryland."

These provisions were in the original Act of 1964, Chap. 95 and have not been amended since the original enactment.

Chief Judge Hammond, for the Court, in *Novack v. National Hot Rod Ass'n,* 247 Md. 350, 231 A. 2d 22 (1967) reviewed our prior cases as well as the relevant Federal cases, and stated:

"We pointed out in *Gilliam v. Moog Industries, Inc.,* 239 Md. 107, 111:

" 'It seems clear that the purpose of the

Legislature in enacting these new provisions was to give the courts of the State personal jurisdiction over all out of state persons and corporations which constitutionally could be reached as having had sufficient Maryland contacts, under the jurisdictional yardstick established by the Supreme Court in cases such as *International Shoe Co. v. Washington*, 326 U. S. 310, 90 L. Ed. 95; *McGee v. International Life Ins. Co.*, 355 U. S. 220, 2 L.Ed.2d 223; and *Hanson v. Denckla*, 357 U. S. 235, 2 L.Ed.2d 1283.'

"In *Van Wagenberg v. Van Wagenberg*, 241 Md. 154, 164-65, in dealing with New York's similar statutory provision for jurisdiction where the defendant 'transacts any business within the State,' Judge Oppenheimer, for the Court, quoted approvingly the language of Judge Fuld for the Court of Appeals of New York in *Longines-Wittnauer Watch Co. v. Barnes & Reinecke*, 209 N.E.2d 68, 75:

" 'In enacting * * * [the long-arm statute], the Legislature chose not to fix precise guidelines, * * * and decided, instead, to follow the broad, inclusive language of the Illinois provision, adopting as the criterion the "transact[ion of] *any* business within the state." The design of the legislation, as expressed by the committee, was to take advantage of the "new [jurisdictional] enclave" (*Bomze v. Nardis Sportswear*, 165 F.2d 33, 36, per L. HAND, J.) opened up by *International Shoe* where the nonresident defendant has engaged in some purposeful activity in this State in connection with the matter in suit.' "

"The recent decisions of the Supreme Court which have held that one outside the State need not have been doing business in the State to be

subject to suit in the State have established criteria for measuring the increased amenability to local suit.

"In *International Shoe Co. v. Washington,* 326 U.S. 310, 90 L. Ed. 95, the Supreme Court said:

" 'Due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice" ' "

and

" 'Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure;' " (247 Md. 353-355, 231 A. 2d 24-25)

Sec. 96 is based on the Uniform Interstate and International Procedure Act. 9B U.L.A. 307-315 (1955 Ed.), *Beaty v. M.S. Steel Co., Inc.,* 276 F. Supp. 259 (D. Md., 1967), *aff'd* 401 F. 2d 157 (CA 4, 1968), *cert. den.* 393 U. S. 1049.

The purpose of the 1964 "Long Arm" Statute was a comprehensive expansion of the judicial jurisdiction of the State of Maryland. See Auerbach, "The 'Long Arm' Comes to Maryland," 26 Md. L. Rev. 13, 30 (1966). Subdivision (1) of subsection (a) of § 96 is identical with § 1.03 (a) (1) of the Uniform Act, which in turn was derived from the Illinois "Long Arm" Statute. *Hardy v. Rekab, Inc.,* 266 F. Supp. 508 (D. Md., 1967).

The rule enunciated by the Supreme Court of the United States in *International Shoe Co. v. Washington,* 326 U. S. 310, 66 S. Ct. 154, 90 L. Ed. 95, 161 A.L.R. 1057 (1945), *supra,* not only applies to corporations but also to individuals as well. See the excellent review of

*International Shoe* and subsequent cases indicating this in the opinion by Frank W. Wilson, United States District Judge in *Hamilton National Bank of Chattanooga v. Russell,* 261 F. Supp. 145 (E.D. Tenn. S.D., 1966).

In considering problems arising under the Long Arm Statute, it is important to distinguish between the *jurisdiction* of the forum state over the out-of-state defendant, on the one hand, and the *merits* of the case, on the other. The defendant Margulies contends, in effect, that inasmuch as he was acting in Maryland as an agent for a disclosed principal, he was not transacting any business in Maryland for himself as an individual, but only for his principal and hence the lower court had no jurisdiction over him under the "Long Arm" Statute. We do not agree with this contention. The declaration in the present case, the itemized statement of account and the affidavit in support of Groom's motion for summary judgment indicate on their face that the agreement was entered into in Maryland with Margulies individually even though he was trading as Marko Distributors, Inc.; that Groom dealt with Margulies "exclusively" and paid the $10,000.00 to him. The service by mail was sent to Margulies in New Jersey and he signed the return receipt without qualification. There is really no contention that the negotiation of the agreement and lease, the execution of these documents in Maryland and the payments in Maryland do not amount to the transaction of *any* business in this State. Cf. *Vitro Electronics v. Milgray,* 255 Md. 498, 258 A. 2d 749 (1969). The contention is that the "transaction of business" was not for Margulies individually but for a corporation, which Margulies contends was a disclosed principal. This contention, however, in our opinion is directed at the question of ultimate *liability* in the case. The statute makes the test of jurisdiction in the *present* circumstances, the transaction of *any* business without any qualification. Margulies did transact business in Maryland and Maryland has personal jurisdiction over him. His *defense* that *he is not liable* because he was acting for a disclosed corporate principal

goes to the *merits* of the case, not to the *power* of the court to make the adjudication.

Margulies admits in his affidavit supporting his motion to strike out the judgment that he received the certified letter containing the declaration in June, 1968. At that time, he knew or should have known that he was sued *individually* and that unless he challenged his liability on that basis, a judgment would likely be entered against him individually. He stated in his affidavit that it was his "intention at the time of receipt. . . to forward same to my attorney for appropriate action"; but he failed to do this because of a fire in the master bedroom of his home in New Jersey. It was not until May 27, 1969 —almost a year later—when he was served in an action in New Jersey to enforce the Maryland judgment that he communicated with his attorney for appropriate action. The declaration stated, prima facie, a cause of action against Margulies individually and the affidavit in support of the motion for summary judgment supports individual liability. When Margulies did not answer within the required time, Judge Pugh was justified in our opinion in entering a judgment by default against Margulies.

We held in *Berwyn Fuel & Feed Co., Inc. v. Kolb*, 249 Md. 475, 240 A. 2d 239 (1968) that after a default judgment against an individual defendant, who contended that the obligation was a corporate and not an individual debt, it was error for the trial court to strike out the judgment after it was enrolled for alleged fraud, mistake or irregularity under Maryland Rule 625 (the motion to set the judgment aside was filed 43 days after the entry of the default judgment). When Judge Moore considered the documents filed at the time of the ex parte hearing in the present case to assess damages on November 15, 1968, they were *not necessarily inconsistent* with the position of Groom that Margulies was operating as an individual but trading as Marko Distributors, Inc. At the most, the entry of the judgment was an error, which we held in *Berwyn Fuel* was not sufficient to amount to fraud, mistake or irregularity under Rule 625.

The lower court, however, did not pass upon the first ground alleged in support of the motion to set aside the judgment, *i.e.*, that it was obtained as a result of fraud, mistake or irregularity, so that our reversal of the order of November 7, 1969, will be without prejudice to whatever further proceedings, if any, Margulies may wish to pursue. We confine our opinion at the present time (1) to holding that the lower court erred in concluding that it had no jurisdiction over the defendant Margulies under the Maryland Long Arm Statute and (2) that the affidavit of counsel for Groom filed pursuant to Rule 107 a did not substantially comply with the Rule. We now turn to that second question.

2.

In our opinion, the affidavit of counsel for Groom filed in the present case on August 6, 1968, pursuant to Rule 107 a 2 substantially complied with that Rule. This Rule requires for service of process outside the State by registered mail, that the affidavit of service "shall be filed in the action showing the circumstances warranting such service and (i) the aforesaid copies were mailed to the defendant and (ii) that the aforesaid copies were in fact received by the defendant as evidenced by his signature on the original return receipt which shall be attached to the affidavit."

The principal circumstance warranting service under Rule 107 a 2 was the fact that the defendant was outside the State of Maryland inasmuch as Rule 107 provides for service of process outside the State. The declaration, itemized statement of account, line to the clerk, motion for summary judgment and supporting affidavit all show that the defendant Margulies transacted business in Maryland and was, prima facie, liable to the plaintiff Groom for $10,000.00, interest and costs arising out of the transaction of that business in Maryland. The affidavit of service refers to those documents and states that they were served by registered mail, delivery restricted to addressee only, and received by him, so that, in effect, they supply the remaining circumstances warranting service. It would

have been better practice to spell out in more detail the complete circumstances warranting the service, but, in our opinion, there was substantial compliance with the requirement of Rule 107 a 2, especially where the defendant Margulies admits in his affidavit that he personally received the suit papers and did not raise any question in regard to the sufficiency of the Affidavit of Service in his motion to strike out the judgment or in his affidavit in support of that motion.

> *Order of November 7, 1969, vacating the judgment of February 27, 1969, reversed, without prejudice, as set forth in this opinion, the appellee to pay the costs.*