**ENVIRONMENTAL RESEARCH INTERNA-
TIONAL, INC., a body corporate of the
District of Columbia, Appellant,**

v.

**LOCKWOOD GREENE ENGINEERS, INC.,**
a body corporate, and Penn Dye and Fin-
ishing Co., Inc., a body corporate, Appel-
lees.

**No. 7860.**

District of Columbia Court of Appeals.

Argued April 17, 1974.

Decided May 23, 1975.

Rehearing en Banc Granted July 10, 1975.

Barry J. Nace, Washington, D.C., for appellant.

Jules G. Korner, III, Washington, D.C., with whom Murray S. Simpson, Jr., Washington, D.C., was on the brief, for appellees.

Before FICKLING and HARRIS, Associate Judges, and QUINN, Associate Judge, Retired.

FICKLING, Associate Judge:

On July 2, 1973, appellant Environmental Research International, Inc., filed a complaint in the Civil Division of Superior

Court for breach of contract and unjust enrichment, naming appellees Lockwood Greene Engineers, Inc.,[1] and Penn Dye & Finishing Co., Inc.,[2] as defendants. The trial court on September 14, 1973, granted appellees' motion to dismiss the action and quash service of process for failure to effect proper in personam jurisdiction. Appellant's sole contention on appeal is that appellees were transacting business in the District of Columbia[3] within the meaning of D.C.Code 1973, § 13–423(a)(1), so as to subject them to the personal jurisdiction of the courts of the District on a claim for relief arising from such activities.[4] We agree and reverse.

The jurisdictional facts can be summarized as follows: Appellant is a District corporation engaged in providing engineering consulting services with its offices in the District. Appellee Lockwood Greene is also an engineering consulting firm; however, it is a Massachusetts corporation with its principal place of business in Spartanburg, South Carolina. Appellee Penn Dye is a Pennsylvania corporation located in Pine Grove, Pennsylvania, whose sole business is furnishing textile cloth for its parent corporation which is similarly located in Pine Grove. Neither appellee is incorporated or licensed to do business in the District. Except for appellees' contacts with appellant and the Environmental Protection Agency,[5] there is no evidence that either appellee has engaged in any activities in the District in recent years.

In the spring of 1971, Penn Dye apparently was faced with the problem of reducing the water pollution caused by the industrial liquid waste produced by its plant.

During this period Penn Dye enlisted the engineering services of Lockwood Greene to aid in solving this problem. In order to abate the water pollution, Penn Dye contemplated the construction of a liquid waste treatment facility and wanted to obtain a construction grant from EPA to help finance the project. Lockwood Greene's function, with respect to the project, would be to set up a pilot waste treatment facility at Penn Dye's plant for the purpose of collecting data which would then be used in an application for the EPA grant. Also during this period, appellant approached Lockwood Greene in Spartanburg, South Carolina, and offered to provide its services in helping to obtain the EPA grant. Several months later, in a letter dated August 30, 1971, Penn Dye authorized appellant and Lockwood Greene to proceed with the construction of the pilot waste treatment facility for the purpose of obtaining the EPA grant. A week and a half later, Lockwood Greene sent appellant a letter outlining appellant's duties concerning the project. Appellant was to act as a liaison with the EPA for Penn Dye and Lockwood Greene. In addition, appellant was to aid in the preparation and processing of the grant application through the EPA.

As a result of the above authorization from Lockwood Greene and Penn Dye, appellant alleges that it performed the following services from its offices in the District of Columbia: Evaluation of data from the pilot facility; discussion of the pilot facility and grant application with personnel from the EPA; aid in preparation of the grant application for submission to EPA; and communication by telephone

---

1. Lockwood Greene Engineers, Inc., will hereinafter be referred to as Lockwood Greene.

2. Penn Dye & Finishing Co., Inc., will hereinafter be referred to as Penn Dye.

3. The District of Columbia will hereinafter be referred to as the District.

4. D.C.Code 1973, § 13–423(a)(1) provides:
   (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—
   (1) transacting any business in the District of Columbia . . . .

5. The Environmental Protection Agency will hereinafter be referred to as EPA.

and mail with Lockwood Greene and Penn Dye concerning these activities. Appellant further alleges that appellees have not paid it $6,784.52 owed for performance of these services.

We begin our analysis of § 13–423(a)(1) of the District's new long-arm statute by examining its legislative history. Although the legislative history is sparse, two short references contained in the House and Senate committee reports are helpful. The Senate Committee on the District of Columbia reported:

> A new chapter (4) is added, incorporating a modified version of the first two articles of the Uniform Interstate and International Procedure Act. The uniform provisions codify recent case law with respect to extraterritorial jurisdiction over and service upon persons in civil litigation, and supply the reorganized trial bench of general jurisdiction with a necessary procedural adjunct. Chapter 4 more specifically grants expanded bases of jurisdiction and modes of service identical to or reciprocal with those provided under the laws of the nearby State of Maryland for the courts of that State, and substantially the same as those provided in the adjacent State of Virginia and approximately 10 other States. [S.Rep.No. 405, 91st Cong., 1st Sess. 35 (1969).]

Likewise, the House Committee on the District of Columbia reported:

> Section 132 on civil jurisdiction and service outside the District of Columbia is modeled on the Uniform Interstate and International Procedure Act, [and] more specifically grants expanded bases of jurisdiction and modes of service identical to or reciprocal with those provided under the laws of the nearby State of Maryland for the courts of that State, and substantially the same as those provided in the adjacent State of Virginia and approximately ten other States. [H.R.Rep.No. 907, 91st Cong., 2d Sess. 61 (1970).]

■ The States of Maryland and Virginia, and the Uniform Interstate and International Procedure Act have, in fact, "transacting any business" sections which are essentially identical to § 13–423(a)(1).[6] It is plain, therefore, that Congress intended to provide the District with a long-arm statute similar to those of Maryland and Virginia. Consequently, when interpreting our long-arm statute, we must look for guidance to the background of the Uniform Act and the long-arm statutes of Maryland and Virginia as interpreted by their courts "with the realization that Congress sought to attain uniformity in the area's three primary jurisdictions." Margoles v. Johns, 157 U.S.App.D.C. 209, 213, 483 F.2d 1212, 1216 (1973).

The courts of both Maryland and Virginia have had an opportunity to interpret the "transacting any business" section of their long-arm statutes. The courts of both these jurisdictions have held that this section reflects a legislative intent to provide in personam jurisdiction over nonresidents who engage in some purposeful activity in the state to the extent permissible by the Due Process Clause. John G. Kolbe, Inc. v. Chromodern Chair Co., 211 Va. 736, 180 S.E.2d 664 (1971); Groom v. Margulies, 257 Md. 691, 265 A.2d 249 (1970). The Uniform Act also recognizes this broad interpretation. The Commissioners' Note to the Uniform Act states that "[t]his provision [transacting business section (a)(1)] should be given the same expansive interpretation that was intended by the draftsmen of the Illinois Act and . . . the courts of that state." 9B Uniform Laws Annot. at 310–11 (1966). The legislative intent of the transacting business section of the Illinois long-arm

---

6. *See* Md.Code Ann. Art. 75 § 96(a)(1) (Cum.Supp.1973); Va.Code Ann. § 8–81.2 (a)(1) (Cum.Supp.1973); Uniform Interstate and International Procedure Act § 1.03 (a)(1).

statute is interpreted to allow personal jurisdiction over nonresident defendants to the extent permitted by the Due Process Clause. Ziegler v. Houghton-Mifflin Co., 80 Ill.App.2d 210, 224 N.E.2d 12 (1967); Koplin v. Thomas, Haab & Botts, 73 Ill. App.2d 242, 219 N.E.2d 646 (1966).

■ Similarly, we are of the view Congress intended that § 13–423(a)(1) permit in personam jurisdiction over nonresidents to the extent allowed under the Due Process Clause of the Constitution. Thus, two questions arise: (1) whether in the instant case the statute by its language permits the District to subject appellees to personal jurisdiction; and (2) if so, whether personal jurisdiction under the statute would nevertheless contravene the Due Process Clause of the Constitution.

With respect to the first question, § 13–423(a)(1) requires that the claim for relief arise from the person's transacting *any* business in the District of Columbia. Here, the claim clearly arises from appellees' only contact with the District: their service contract with appellant.

Appellees contend, however, that their entrance into the District to deal with a federal agency places them within the well recognized exception of *Mueller Brass Co. v. Alexander Milburn Co.*, 80 U.S. App.D.C. 274, 152 F.2d 142 (1945); therefore, they are not "transacting business" in the District within the meaning of § 13–423(a)(1). This contention is wide of the mark.

■ The court in *Mueller Brass Co.* was concerned with the question of whether maintenance of an office and representative in the District by a foreign corporation, to serve as a liaison with federal agencies, was a substantial enough contact to justify in personam jurisdiction against the foreign corporation in the District on a claim arising from dealings—entirely distinct—from those activities. Section 13–

423(a)(1), however, applies to the wholly different situation where, as in this case, the claim for relief arises from the foreign corporation's activities in the District. Thus, *Mueller Brass Co.* is inapposite to the instant case.

The analysis concerning the constitutional question is more difficult. We begin by discussing several Supreme Court decisions which have established meaningful guidelines as to the limits of due process in a setting such as the one here. *See* Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In a landmark decision, the Court in *International Shoe Co.* held that in order to subject a foreign corporation to a judgment in personam, the Due Process Clause requires only that the foreign corporation have minimum contacts within the state of such character that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." [7] The Court further stated:

> Whether due process is satisfied must depend . . . upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations. . . .

> But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the

---

7. 326 U.S. at 316, 66 S.Ct. at 158.

state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue. . . . [326 U.S. at 319, 66 S.Ct. at 160.].

Twelve years later the Court applied the "minimum contacts" test of *International Shoe Co.* to *McGee, supra.* In *McGee* the defendant, a Texas insurance company, had reinsured the life of a California resident. The policy had been initially issued by an Arizona insurance company whose insurance obligations had been assumed by defendant. The only contact defendant had with California was mailing the reinsurance certificate and premium notices into the state and receiving the signed certificate and premium payments by mail from California. Defendant never maintained either an agent or office in California. And, there was no evidence that it had ever solicited any insurance business in California apart from this one policy. Defendant refused to pay the proceeds of the policy upon the death of the insured; consequently, the beneficiary, also a California resident, brought suit in California. The Court held that there had been sufficient contact to enable California to subject defendant to in personam jurisdiction in that state. The Court said:

> It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State. . . . The contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died. It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. . . . [355 U.S. at 223, 78 S.Ct. at 201.]

The Court stressed the inconvenience to insureds if they are required to bring suit where the insurer has its home office and, while the Court recognized that there may be some inconvenience to the insurer by subjecting it to suit in California, such inconvenience did not amount to a denial of due process. *Id.*

Later in the same term, the Court in *Hanson, supra,* further defined the "minimum contacts" test as follows: "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 357 U.S. at 253, 78 S.Ct. at 1240.

It is apparent that these cases do not provide a hard and fast rule for determining what acts by a nonresident defendant will subject it to a court's jurisdiction. *See generally* Annot., 27 A.L.R.3d 397 (1969). What is provided, however, is a guide by which each case is decided on its own particular facts. *John G. Kolbe, Inc., supra.*

In the instant case appellees, through their contract with appellant, caused appellant to carry on business activities in the District on their behalf. In addition, it is reasonable to infer that appellees were aware at the time the contract was made that these activities would be performed in the District. Appellant's office is located in the District and it was hired to help process an application for a construction grant through a federal agency which is also located in the District. Thus, we are of the view that appellees have purposefully availed themselves of the privilege of transacting business in the District and have thereby invoked the benefits and protection of the District's laws.

The District, moreover, has a manifest interest in providing a forum for its residents when their clients refuse to pay fees owed for services performed in the District. These residents would be at a disadvantage if they had to follow their clients to other jurisdictions in order to bring suit for their fees. Although there may be inconvenience to the clients in being held to suit here, under the facts of this case we

do not think that such inconvenience constitutes a denial of due process.

■ In conclusion we hold that maintaining this action in the District pursuant to § 13–423(a)(1) would not offend "traditional notions of fair play and substantial justice," and thereby contravene the Due Process Clause of the Constitution. *Accord,* Drilling Engineering, Inc. v. Independent Indonesian American Petroleum Co., 283 So.2d 687 (La.1973); Zerbel v. H. L. Federman & Co., 48 Wis.2d 54, 179 N. W.2d 872 (1970).

Reversed.

HARRIS, Associate Judge (dissenting):

In my opinion, the result reached by the majority is contrary to the well-reasoned rationale of previous decisions in this jurisdiction, and impermissibly abridges two rights guaranteed by the Constitution. Accordingly, I respectfully dissent.

We are dealing with a deceptively simple statutory provision. Section 13–423 of the District of Columbia Code provides in part:

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—

(1) transacting any business in the District of Columbia;

.    .    .    .    .    .

This portion of our present long-arm statute differs somewhat from the predecessor which existed when several earlier cases (to be cited below) were decided. Basically, the provision before us has two features which are different from those in the earlier § 13–103 of the Code. First, the term "doing business" was amended to "transacting any business", thereby removing any need for a plaintiff to demonstrate a continuing course of business conduct in this jurisdiction by a defendant. Second, it was made explicit that a party could become subject to in personam jurisdiction by transacting business here through an agent, as well as directly.

The statute could subject appellees to in personam jurisdiction here only if they were "transacting any business" in the District of Columbia, either "directly or by an agent." The majority appears to reach the conclusion that both appellees were transacting business here directly, although neither has an office or even an employee in the District of Columbia, and although neither makes any sales here. It is true that appellant was acting as Penn Dye's agent at least to some degree in representing it before the Environmental Protection Agency (EPA).[1] The root question, however, is whether *appellant's* activities in this jurisdiction constituted the transacting of business here *by the appellees.* In my judgment, they did not.[2]

Appellant was an independent contractor, correctly described by the majority as a "District corporation engaged in providing engineering consulting services". Unquestionably it did transact business here. However, that fact, standing alone, provides no basis for subjecting appellees to the jurisdiction of our courts. It is a defendant, not a plaintiff, who must be found

---

1. In concluding that there is in personam jurisdiction over both appellees, the majority disregards the significant differences between their respective roles. Lockwood Greene is a South Carolina engineering firm which was engaged by Penn Dye. The federal assistance which was sought was for Penn Dye, not for Lockwood Greene. The exercise of jurisdiction over Lockwood Greene thus is even more strained than is that over Penn Dye.

2. My position on this point appears indirectly to be concurred in by the majority. It characterizes appellees' role in this transaction as having "caused appellant to carry on business activities in the District on their behalf." That statement strikes me as being inconsistent with appellees' transacting business here.

to be engaged in a purposeful business activity within a jurisdiction. *See* Ajax Realty Corp. v. J. F. Zook, Inc., 493 F.2d 818, 820–21 (4th Cir. 1972); Piracci v. New York City Employees' Retirement System, 321 F.Supp. 1067 (D.Md.1971); *cf.* Groom v. Margulies, 257 Md. 691, 265 A.2d 249 (1970); John G. Kolbe, Inc. v. Chromodern Chair Co., 211 Va. 736, 180 S.E.2d 664 (1971).

Appellant's role was to aid appellees in seeking a grant from the EPA for Penn Dye. In holding that such activity alone permits suit here against the nonresident appellees, the majority runs afoul of the rationale of earlier decisions in the District of Columbia. Under the prior "doing business" statute, our courts consistently held that in personam jurisdiction could not be exercised, even over a corporation which had employees and an office in the District of Columbia, as long as the exclusive purpose of the party's acitivities here was dealing with federal instrumentalities. Weisblatt v. United Aircraft Corp., D.C. Mun.App., 134 A.2d 713 (1957); Traher v. De Havilland Aircraft of Canada, Ltd., 111 U.S.App.D.C. 33, 294 F.2d 229 (1961), cert. denied, 368 U.S. 954, 82 S.Ct. 397, 7 L.Ed.2d 387 (1962); Mueller Brass Co. v. Alexander Milburn Co., 80 U.S.App.D.C. 274, 152 F.2d 142 (1945).

We may assume that Congress legislated with care when it enacted the present long-arm statute. *See* Palmore v. United States, 411 U.S. 389, 395, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973). Assuredly it was aware of the established line of cases providing a federal government contact exception to the concept of "doing business" for purposes of in personam jurisdiction. Had Congress wished to broaden the statute to encompass such an activity, it could have sought to do so.[3] It did not. In my view, the principle first announced in the *Mueller Brass* decision remains sound, and should be adopted by us with respect to the present statute. *Cf.* Margoles v. Johns, 157 U.S.App.D.C. 209, 219, 483 F.2d 1212, 1222 (1973).

The majority seeks to distinguish *Mueller Brass* by stating that "in this case, the claim for relief arises from the foreign corporation's activities in the District." That effort fails, for two reasons. First, the claim did not arise from "the foreign corporation's activities in the District"; it arose from the appellant's activities here on behalf of one of the foreign corporations. Second, from a jurisdictional standpoint, we are concerned with whether or not the appellees themselves were transacting business in the District of Columbia. If a defendant does not transact business here, either directly or by an agent, there can be no in personam jurisdiction.[4] *Mueller Brass* and its progeny held that in personam jurisdiction may not be exercised over a corporation whose sole contact in the District of Columbia is with the federal government. Since that has been held to be true where a foreign corporation has employees and an office here, it should be true a fortiori where there is no employee and no office, and where the sole contact with the federal government is made by a local independent contractor. *See* Read v. LaSalle Extension University, 81 U.S. App.D.C. 177, 156 F.2d 575 (1946). *See also* Orton v. Woods Oil & Gas Co., 249 F.2d 198 (7th Cir. 1957).

Even if it be assumed, arguendo, that appellees' utilization of appellant to deal with a federal agency somehow did consti-

---

3. However, I express below my reasons for believing that had Congress sought to make such an extension of the concept of long-arm jurisdiction, the result would have been unconstitutional.

4. It should be mentioned that we are dealing here only with in personam jurisdiction based upon transacting business in the District of Columbia. Section 13–423(a) provides five other bases for long-arm jurisdiction over nonresidents, none of which is relevant to this case.

tute transacting business here by the appellees, I am of the opinion that there are two constitutional infirmities in the majority's result. First, I believe that appellees' rights to due process under the Fifth Amendment are violated by the majority's holding.[5] I have stated my conviction that it was the appellant, not the appellees, who transacted business in the District of Columbia. Relevant is the following statement of the Supreme Court in Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958):

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*See also* International Shoe Co. v. Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Were the appellees—in contradistinction to appellant—"conducting activities within" the District of Columbia? They were not. Did appellees invoke "the benefits and protections of [the] laws" of the District of Columbia? They did not. When one considers the broad range of long-arm cases, it is seen that due process requirements quite properly are satisfied rather readily when a nonresident defendant is a seller of goods or services within a partic-

ular jurisdiction, but nowhere near so readily when a nonresident defendant is merely a buyer. Appellant was a seller operating within the District of Columbia, pursuant to a contract executed elsewhere, on behalf of foreign corporations; appellees did no more than employ the services of a local independent contractor. In such a situation, due process concepts preclude the exercise of in personam jurisdiction over a defendant. *See, e. g.,* E. R. Callender Printing Co. v. District Court, 510 P. 2d 889 (Colo.1973) (en banc).

The majority's result finds scant support in relevant authorities.[6] The key to the decision appears to lie in the following statement in the majority opinion:

> The District, moreover, has a manifest interest in providing a forum for its residents when their clients refuse to pay fees owed for services performed in the District. These residents would be at a disadvantage if they had to follow their clients to other jurisdictions in order to bring suit for their fees.

I cannot concur in such a subjective basis for a decision which I believe to be contrary to law. Under the majority's decision, every non-District of Columbia resident which employs one of our city's hundreds of consulting firms—including law firms—to deal with the federal government thereby will subject itself to the jurisdiction of our courts for a claim arising therefrom. True, such a rule will make it easier for a District of Columbia firm to sue a nonresident client over a fee dispute, but at what overall price?

---

5. The great majority of cases considering the due process aspects of long-arm jurisdiction deal with the Fourteenth Amendment, which is applicable to the states. It has been held that the Fifth Amendment establishes comparable rights within the District of Columbia. *See* Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

6. The majority does place considerable reliance upon McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). However, that decision is of little relevance, for the California long-arm statute involved was specific in seeking to obtain jurisdiction over out-of-state insurance companies with policy holders in California.

**398**

I share the following views expressed in Anderson v. Shiflett, 435 F.2d 1036, 1038 (10th Cir. 1971):

We have here a single, isolated transaction in the form of a contract for personal service. The totality of the contacts with Oklahoma was the performance of certain phases of the work at the plaintiff's Oklahoma City office. * * * To support jurisdiction, the plaintiff relies on his own unilateral activities. Under the decision in Hanson v. Denckla this is not enough. To become subject to Oklahoma jurisdiction, the defendant must purposefully avail himself of the privilege of doing business in that state and thereby invoke the benefits and protections of its laws. The record before us does not satisfy this requirement. Instead, it shows no more than the unilateral performance of contracted personal service in the forum. The idea that such performance alone can subject the employer to the jurisdiction of the forum has frightening consequences.

In conclusion, I note the second constitutional infirmity which I find in the majority's decision. The First Amendment provides: "Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances." Today the majority holds that any nonresident who hires an independent contractor in the District of Columbia to petition the federal government on his behalf thereby becomes subject to suit in this jurisdiction on the basis of transacting business here. If Congress had intended such a result in enacting the present long-arm provision, I believe the statute would be unconstitutional as effecting an undue abridgment of the exercise of that First Amendment right. *Cf.* Margoles v. Johns, *supra* 157 U.S.App.D.C., at 219, 483 F.2d at 1222.

I would affirm the trial court's dismissal of appellant's claim, and so respectfully dissent.