**AMERICAN DIRECTORY SERVICE AGENCY, INC., Plaintiff,**

v.

**Amy L. BEAM, Defendant and Counterclaimant,**

v.

**AMERICAN DIRECTORY SERVICE AGENCY, INC., et al., Counterclaim Defendants.**

Civ. A. No. 87–1653.

United States District Court, District of Columbia.

May 15, 1990.

---

**3.** The Court is not implying that plaintiff is at fault for all of the continuances granted in the case.

Hal I. Lackey, Coggins, Harman, Lackey & Lowe, Laurance J. Ochs, Friedman & Ochs, Washington, D.C., for plaintiff and counterclaim defendants.

Charles Claxton, Washington, D.C., for defendant and counterclaimant.

## ORDER

JOHN H. PRATT, District Judge.

This copyright infringement action was referred to Magistrate Robinson in December 1988 for pretrial proceedings and a report and recommendation on dispositive motions.[1] On November 16, 1989, we stayed this action pending the conclusion of bankruptcy proceedings involving counterclaim defendant Datacomp Corporation ("Datacomp"). We subsequently lifted this stay for the limited purpose of allowing the magistrate to rule on: (1) counterclaim defendant R. Clay Kime's motion to dismiss; (2) defendant Amy L. Beam's motion for sanctions against Laurance J. Ochs, counsel for Kime and counterclaim defendant Michael D. Tracy; and (3) Kime and Tracy's cross-motion for sanctions against Charles R. Claxton, counsel for Beam.[2] The case has a long and tortured history (120 separate docket entries comprising more than thirteen separate docket pages).

It has been featured by animosity of counsel on both sides. It is not a litigation model for others to follow. The particular motions for sanctions relate to the August 9 and 10, 1989, depositions of Kime and Tracy.

The magistrate, in a thorough and well reasoned opinion, has recommended that Kime's motion to dismiss be denied, that Beam's motion for sanctions be granted, and that Kime and Tracy's crossmotion for sanctions be denied. *See* Report and Recommendation filed March 30, 1990 [hereinafter "Recommendation"]. Because Kime and Ochs have objected to almost every aspect of this Recommendation, we have reviewed the matters *de novo*. *See* 28 U.S.C. § 636(b)(1)(C) (1988). For the reasons that follow, we adopt the magistrate's Recommendation, subject to the modifications set forth below.

## I. *The Motion to Dismiss*

Kime, a resident of Virginia, is the president and controlling shareholder of Datacomp, a Virginia corporation that deals in computer hardware, software, and related services. Beam seeks monetary and injunctive relief against Kime and Datacomp for copyright infringement, interference with contract, and unfair competition. In addition, she has asserted a breach of contract claim against Datacomp. Kime claims we lack personal jurisdiction over him because he has not "personally done business in the District of Columbia" (the "District"). Although Kime has had numerous contacts with this forum on behalf of Datacomp,[3] he avers that: (1) because

---

1. By way of background, this case arises from the development in 1984 by defendant and counterclaimant Amy L. Beam of computer software programs ("ASR software") for use by advertising agencies in the Yellow Pages industry. This litigation began in 1987 when plaintiff American Directory Service, Inc. ("ADS"), filed suit against Beam for a declaratory judgment as to the ownership of the ASR software. Beam counterclaimed for copyright infringement, unfair competition, and tortious interference with contract. On March 25, 1988, Beam was permitted to add new parties as co-defendants. Motions to dismiss were filed by at least four of the co-defendants, including R. Clay Kime (president and controlling shareholder of co-defendant Datacomp Corporation) and Michael D.

Tracy (then Datacomp's Director of Marketing), for lack of personal jurisdiction and improper venue.

2. Although Kime and Tracy filed a joint motion to dismiss, only Kime requested that the stay be lifted. Therefore, we will not rule on Tracy's motion at the present time.

3. Kime's deposition revealed that several Datacomp customers were located in the District and that Kime was at times required to visit those customers. Kime, in a strange lapse of memory, testified that he was unable to recall any more details, and that no Datacomp records existed that might provide additional informa-

they were unrelated to Beam's cause of action, the requirements under the applicable long arm statute have not been satisfied; and (2) the "corporate shield" doctrine renders these contacts irrelevant.

■ We reject both lines of argument. As for the first, it is well settled that if Kime regularly did or solicited business, or derived substantial revenue from goods used or services rendered, in the District, he is subject to suit in the District for causing, "by an act or omission outside the District," any tortious injury here. D.C. Code § 13–423(a)(4) (1989); *see Gatewood v. Fiat, S. p. A.,* 617 F.2d 820, 824–25 (D.C.Cir.1980) (the regular course of conduct required under subsection (a)(4) need not be related to the injury). Kime's objection on this ground is completely without merit. As for the second, we concur with the magistrate's conclusion that the "corporate shield" doctrine does not bar the exercise of personal jurisdiction in this case.

■ The "corporate shield" doctrine is an equitable canon of statutory construction. Courts applying it to a decision concerning personal jurisdiction "hold that it is the corporation—and not the individual who acts for the corporation—which is 'transacting business' under the relevant longarm statute." *Chase v. Pan–Pacific Broadcasting, Inc.,* 617 F.Supp. 1414, 1423 (D.D.C.1985) (citations omitted). Critics have emphasized, however, that this use of the doctrine "confuses procedural and substantive questions and unreasonably immunizes from jurisdiction one who in fact acted in the forum state." *Id.* (citations omitted). We agree. The doctrine properly "goes to the *merits* of the case, not to the *power* of the court to make the adjudi-

cation." *Id.* (quoting *Groom v. Margulies,* 257 Md. 691, 265 A.2d 249, 255 (1970)).

■ Even if we accepted the "corporate shield" doctrine as a valid jurisdictional defense, we would still deny the motion to dismiss. Since the doctrine is based on principles of equity, the magistrate properly concluded that Kime's repeated failure to cooperate with discovery, *see infra,* weighed in favor of exercising jurisdiction. Moreover, she attached appropriate significance to the fact that Kime, as president and controlling shareholder of Datacomp, was far from an ordinary employee. *See Calder v. Jones,* 465 U.S. 783, 789, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984). We may safely infer that Kime derived substantial revenue from Datacomp sales generated by his efforts in the District. *See Zeman v. Lotus Heart, Inc.,* 717 F.Supp. 373, 377 (D.Md.1989). Under these circumstances, application of the "corporate shield" doctrine is not in the interest of equity. Accordingly, Kime's motion to dismiss is denied. We turn now to the motions for sanctions.

## II. *The Motions for Sanctions*

■ Rule 37(b)(2) authorizes sanctions for a party's failure to obey a discovery order. *See* Fed.R.Civ.P. 37(b)(2). Among other things, a court may require the party, his attorney, or both to pay "the reasonable expenses, including attorneys' fees, caused by the failure, unless ... the failure was substantially justified or ... other circumstances make an award of expenses unjust." *Id.* In addition, the United States Code provides that an attorney who "unreasonably and vexatiously" multiplies litigation proceedings may be held personally

tion. Accordingly, the magistrate appropriately relied on the affidavit of Richard L. Suslick, a former Datacomp vice president. Suslick explained:

4. ... Datacomp was a dealer with Fortune Systems Corp., a manufacturer of multiuser computer systems. [As] ... Fortune's primary dealer for the federal government market[,] ... Datacomp had a contractual obligation regularly to call upon and solicit business from agencies of the federal government. Most of those agencies were located in the District.... Mr. Kime and Mr. Tracy were

both involved in marketing to the federal government.

5. From time to time, I would make calls on customers or potential customers of Datacomp in the District ... with Mr. Kime or Mr. Tracy, or both. ....

6. In addition ..., I was aware from my own observations and conversations with Mr. Kime and Mr. Tracy that they were calling upon customers in the District ... on a regular basis.

Suslick Aff. at 2.

accountable for "the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927 (1988). After reviewing the record, we agree with the magistrate that Ochs should be personally sanctioned under these provisions for his conduct during the August 1989 depositions of Kime and Tracy.

On February 7, 1989, in an effort to discover facts pertinent to the motion to dismiss, the magistrate authorized Beam to depose Kime and Tracy concerning their contacts with the District. *See* Order filed Feb. 7, 1989. These depositions proved useless, however, because Ochs, purporting to rely on the "corporate shield" doctrine, instructed his clients not to answer any questions concerning their activities on behalf of Datacomp. After a hearing on Beam's subsequent motion to compel, the magistrate found Ochs' reliance on the "corporate shield" doctrine unjustified. She explained that deponents generally must answer questions subject to objections, *see* Fed.R.Civ.P. 30(c), and that the applicability of the "corporate shield" doctrine would be determined at a later time. *See* Order filed July 17, 1989, at 3–4. Accordingly, she ordered Kime and Tracy to respond to questions concerning their activities in the District on behalf of Datacomp. *Id.* at 4.

When the depositions were reconvened on August 9 and 10, 1989, Ochs' conduct was nothing less than outrageous. In several instances he "coached" responses,[4] and he frequently instructed his clients not to answer at all. In addition, Ochs' repeated objections, puerile arguments with opposing counsel, and vexatious requests for clarification prevented the elicitation of any meaningful testimony and needlessly added to the expense of this litigation.[5]

---

4. For example, when Claxton asked Kime whether Datacomp had customers in the District, Ochs objected because the word customer had not been defined. This exchange followed:

   CLAXTON: The man speaks English. He is a man of intelligence and accomplishment. I don't have to tell him what the word customer means.
   OCHS: Well, I am going to continue my objection because I don't know what the word customer means in the context that you are using it. If the witness wants to speculate as to what a customer is, ... he may do so, recognizing that it is an objectionable question.

   Kime Dep. at 20. When Claxton repeated the question, Kime asked for a definition. *Id.* Similarly, after listening to Ochs badger Claxton concerning the meaning of "role in any sales," Kime requested that the phrase be clarified. *See id.* at 22.

5. For instance, when Claxton asked whether any Datacomp customers were located in the District, Ochs claimed the question fell "far outside the scope of" the magistrate's July 17, 1989, Order and was irrelevant to the issue of personal jurisdiction. Kime Dep. at 32. When Claxton repeated the question, stating his intention to explore the contacts Kime may have had with these customers, Ochs delivered the following diatribe:

   OCHS: I know you want ... the identity of customers so that you can go talk to [them]— for what purpose, to harass my client. This is a harassment case, and when you go to our customers to seek information which has nothing to do with jurisdiction ..., I think it is highly inappropriate.

   CLAXTON: You're fantasizing.
   OCHS: You are fantasizing with this entire case and listening to a fantasy woman as far as I am concerned.
   CLAXTON: Well, your hang-ups on the personalities involved are your problem to deal with. I am simply trying to conduct a deposition.
   OCHS: You are simply seeking information which [sic] to harass my clients with.

   *Id.* at 34–35. Later, Claxton asked about Datacomp records that might reflect Kime's activity in the District. When Kime said that none existed, the following exchange took place:

   CLAXTON (to KIME): Let me ask some specifics about the types of records that might have existed since I find that a curious answer.
   OCHS: What is curious, sir?
   CLAXTON: The fact there are no records that would refer—
   OCHS: What is curious? Why do you insist on challenging the witness' truthfulness and veracity ...? The man said none. You didn't have to say oh, it is curious.
   CLAXTON: Let me ask some questions about the types of records.
   OCHS: Mr. Claxton, I resent your continued implication that the witnesses are somehow not being truthful and forthcoming, and unless you have a basis to make your comments about their veracity, I suggest that you no longer make such comments.
   CLAXTON: I think the questions will make clear that I want to be sure—
   OCHS: We are not talking about the questions. We are talking about your comments on the testimony.

In his defense, Ochs argues that he merely sought to limit the scope of the depositions to what the magistrate had ordered.[6] This argument is unavailing. By disallowing any question that did not specifically refer to his clients' contacts with the District on behalf of Datacomp, Ochs prevented Claxton from making the usual introductory inquiries necessary to set the stage and to avoid compound questions. Moreover, Ochs was on clear notice that questions were to be answered *over* any objections. Finally, many of the questions pertinent to jurisdiction necessarily called for information relevant to substantive issues as well. Ochs' contention that these questions were improper is completely without merit.

Without a doubt, Ochs has "unreasonably and vexatiously" multiplied the proceedings in this case. *See* 28 U.S.C. § 1927. He unjustifiably protracted and obstructed Kime and Tracy's depositions and thereby triggered Beam's present motion for sanctions. In addition, because of his conduct, Kime and Tracy failed to provide discovery as ordered by the magistrate. *See* Fed.R.Civ.P. 37(b)(2). Therefore, we will require Ochs himself to pay to Beam the reasonable expenses, including attorneys' fees, incurred in connection with the August 1989 depositions and the subsequent cross-motions for sanctions.

Accordingly, it is by the Court this 15th day of May, 1990,

ORDERED that Kime and Tracy's motion to dismiss is denied with respect to Kime; it is

ORDERED that Beam's motion for sanctions is granted; it is

ORDERED that Ochs shall personally pay to Beam the reasonable expenses, including attorneys' fees, incurred in connection with the August 1989 depositions of Kime and Tracy and the subsequent cross-motions for sanctions; it is

ORDERED that Magistrate Robinson shall determine the amount of the award to which Beam is entitled under this Order; it is

ORDERED that Beam, within thirty (30) days of this Order, shall submit to the magistrate affidavits, time records, and such other evidence as may be necessary to prove the amount of the award to which she is entitled under this Order, *see Fritz v. Honda Motor Co.*, 818 F.2d 924, 925 (D.C. Cir.1987); it is

ORDERED that Ochs shall have ten (10) days to object or otherwise respond to Beam's submission; and it is

FURTHER ORDERED that Kime and Tracy's motion for sanctions is denied.

CLAXTON: Will you let me make my statements? I think you will find that the questions will make clear—
OCHS: I will let you make questions. I will not let you make statements about the truthfulness and veracity of the witnesses.
CLAXTON: You are the one that said [that,] I didn't. I think the questions will make clear that—
OCHS: What do you mean by curious, that I find that curious?
CLAXTON: Will you let me make my statement, Mr. Ochs? Sometimes if you would listen a little more, you might learn a little more about what is going on.

OCHS: I doubt I could learn anything from you, sir.
*Id.* at 59–61. The dialogue continued along these lines for several more pages. At one point, Ochs accused Claxton of asking about the documents "for the continued purpose" of protracting the lawsuit. *Id.* at 69.

6. *Ochs also claims that meaningful discovery was elicited. In support of this contention, he notes that the depositions lasted over six hours. We find this reasoning curious, since of the approximately 220 pages of transcript, the equivalent of at least one third—or over 73—are filled with Ochs' incessant obstructive and vexatious tactics.*