Marvin NOEL, Plaintiff-Appellee,

v.

S. S. KRESGE COMPANY and K-Mart Corporation, Defendants and Third-Party Plaintiffs-Appellees (80–3557), Appellants (80–3723),

and

Greenhill Kato & Company, Ltd., Third-Party Defendant-Appellant (80–3557).

Nos. 80–3557, 80–3723.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 7, 1981.

Decided Feb. 8, 1982.

John M. Adams, Porter, Wright, Morris & Arthur, Columbus, Ohio, for appellant in case no. 80–3557.

Charles E. Taylor, Theodore D. Sawyer, Crabbe, Brown, Jones, Potts & Schmidt, Columbus, Ohio, for Noel.

Theodore Sawyer, Crabbe, Brown, Jones, Potts & Schmidt, Columbus, Ohio, for appellants in case no. 80–3723.

**1152**

Before WEICK * and LIVELY, Circuit Judges, and GUY,** District Judge.

LIVELY, Circuit Judge.

The appeal in No. 80–3557 challenges the personal jurisdiction of the district court over the third-party defendant, a Japanese trading company. The appeal of the defendant, S. S. Kresge Company, in No. 80–3723, takes issue with various trial and post-trial rulings of the district court. The appeals were consolidated for oral argument in this court.

## I.

### A.

Many of the facts are undisputed. S. S. Kresge Company (hereafter K-Mart), a Michigan corporation, purchased 11,982 dozen six-inch "long-nose" pliers from Greenhill Kato & Co., Ltd. of Osaka, Japan (hereafter Greenhill). The pliers were manufactured by an unrelated company in Korea, and Greenhill was paid a 5% "agent's fee" by K-Mart. The purchase was made by a K-Mart buyer at Greenhill's place of business in Osaka. The sale of the pliers was evidenced by two documents—an "Import Order" which is a printed form of K-Mart and a "Sales Note" which is a printed form of Greenhill. The pliers were purchased as a "Dollar Day Item" and were delivered mounted on cards which identified them as such and stated that they had been manufactured in Korea for K-Mart. The F.O.B. price of the pliers was 48 cents each and their total cost to K-Mart, when delivered to a retail store, was 65 cents each.

The plaintiff Marvin Noel, a resident of Ohio, was seriously injured on March 26, 1977 when a pair of the Korean pliers broke while he was using them in attempting to re-attach a brake spring on his son's automobile. The pliers belonged to Noel's brother-in-law who had purchased them from a K-Mart store in Westerville, Ohio. The injury occurred at Johnstown, Ohio.

### B.

Noel filed a products liability action against K-Mart in the district court on December 20, 1977, claiming the pliers were sold in a defective condition which was not observable by the user. In its answer K-Mart admitted that the pliers which broke while being used by the plaintiff were manufactured in Korea for distribution and sale by K-Mart. It also admitted that it expected the pliers to be sold to the public "as a tool." K-Mart denied that the pliers were sold in a defective condition and asserted affirmative defenses of assumption of risk and misuse of the tool by Noel.

K-Mart filed a third-party complaint against Greenhill seeking indemnification for any recovery which Noel might have from K-Mart. The claim for indemnification was based on the following language, which appeared in the first numbered paragraph of the terms and conditions printed on the reverse side of the Import Order:

> Seller agrees to protect, hold harmless, defend (if requested by buyer S. S. Kresge Company or its subsidiaries) and indemnify buyer against all liability, loss and expense, including attorney fees, arising from any proceeding brought by any party or governmental agency because of seller's failure to comply with any laws, regulations, or rulings; from any claim of infringement of any patent, trademark, or copyright; from any claim of unfair trade or competition with respect to the merchandise or any part thereof delivered hereunder, or from bodily injury, property or other damage arising out of any use, possession, consumption or sale of said merchandise.

In its answer Greenhill asserted that the district court lacked *in personam* jurisdiction. It admitted the sale of the pliers, but denied that the sale was made pursuant to the Import Order. Instead, it alleged, the

---

* Circuit Judge Weick retired from regular active service under provisions of 28 U.S.C. § 371(b) and became a Senior Circuit Judge.

** The Honorable Ralph B. Guy, Jr., Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

pliers were purchased "pursuant to a Sales Note" issued by Greenhill. One of the terms included among the "General Understanding and Conditions" which appeared on the reverse side on the Sales Note provided:

> 15) *Arbitration* In case of dispute arising the case will be settled in Osaka. The dispute should be settled as amicably as possible, failing which the dispute will be referred to The Japan Commercial Arbitration Association in Osaka or Tokyo.

On the basis of this language Greenhill maintained that the dispute involved in the third-party action was subject to arbitration in Japan and that suit could be brought only in Osaka.

### C.

The district court held that it had jurisdiction over all the parties and the case was tried before a jury, which returned a verdict for the plaintiff against K-Mart. The district court did not submit the indemnification claim to the jury, but directed a verdict for K-Mart on that claim. Though it was stipulated that Greenhill had no agents or employees in Ohio and had never directly transacted business there, the district court found that due process was not offended by permitting Greenhill to be sued in Ohio. The court found that a foreign distributor who sells to K-Mart could not reasonably fail to anticipate that the goods would be sold in Ohio which is among K-Mart's "major markets." This finding followed a discussion of recent Supreme Court decisions dealing with the due process standards which determine whether a court may exercise jurisdiction over a non-resident. The district court emphasized the particular language from the Supreme Court's most recent decision on the subject, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), where the Court held that jurisdiction may be validly exercised over a non-resident corporation "that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id.* at 297–98, 100 S.Ct. at 567–68 (citations omitted).

Noting an apparent inconsistency in the two documents respecting arbitration (K-Mart's Import Order provided for arbitration at Detroit), the district court nevertheless concluded that the arbitration provision contained in the Sales Note had no application to the indemnification claim. The court found that this arbitration clause referred to commercial disputes, *e.g.*, controversies over the quality or quantity of goods shipped, but did not specify the forum for a claim of indemnification. The district court found that nothing in the Sales Note qualified in any way K-Mart's right under the Import Order to be indemnified against any claim for bodily injury arising from the use of the pliers.

### II.

■ Greenhill does not contest the district court's conclusion that it was properly served under Ohio's "long arm" statute, assuming the exercise of jurisdiction was constitutionally permissible. Ohio exercises personal jurisdiction over foreign sellers of goods even though there have been no direct sales in Ohio so long as the seller receives a substantial amount of revenue from goods used in Ohio and the seller might reasonably have expected the goods to be used there. See *Ross v. Spiegel, Inc.*, 53 Ohio App.2d 297, 303, 373 N.W.2d 1288 (1977). The district court found that the due process formula "exactly parallels" the Ohio test set forth in *Spiegel.* The issue presented on appeal is whether the district court properly applied the constitutional test for *in personam* jurisdiction over a non-resident.

Both K-Mart and Greenhill place principal reliance upon the recent Supreme Court decision in *World-Wide Volkswagen Corp. v. Woodson, supra.* The majority opinion in *World-Wide Volkswagen* defined more precisely than before the requirement that a state have "minimum contacts" with a commercial transaction which is claimed to provide the basis for personal jurisdiction over a foreign corporation or other non-resident. In *International Shoe Co. v. Washington,*

326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the Court articulated the minimum contacts concept and concluded that its proper application would assure the maintenance of "traditional motions of fair play and substantial justice." *International Shoe, supra*, 326 U.S. at 316, 66 S.Ct. at 158, quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940). In *McGee* the Court recognized a trend "toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents." 355 U.S. at 222, 78 S.Ct. at 200. This trend was responsive to the needs of a national economy which had become increasingly dependent upon business which is conducted across state lines. Fundamental fair play and substantial justice were not impinged by this expansion because those who conduct business outside their states of residence should reasonably expect to be required to defend claims by persons in such states who claim injury from the acts or omissions of the nonresident. In cases where the nonresident has not been engaged in ordinary commercial transactions, a less expansive treatment has been given, though the same basic test has been applied. See, *e.g., Kulko v. California Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

We conclude that the district court applied *World-Wide Volkswagen* correctly. In that case the Supreme Court stated that the only connection between the nonresident defendants, a New York wholesale distributor and a New York retailer of automobiles, and the forum state, Oklahoma, was "the fact that an automobile sold in New York to New York residents became involved in an accident in Oklahoma." 444 U.S. at 287, 100 S.Ct. at 562. The Court reaffirmed the "minimum contacts" test, but found that this test was not satisfied in the case before it. Neither of the New York defendants had ever done business in Oklahoma or availed itself of any privileges or benefits of Oklahoma law. They were engaged in an essentially local business in the New York area, and the fact that they dealt with a mobile product which might be driven to Oklahoma was found to be an insufficient basis for personal jurisdiction over them. While "foreseeability" is a factor to be considered, more than a mere likelihood of some future contact with the forum state is required. "Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 297, 100 S.Ct. at 567 (citations omitted).

Though the Court in *World-Wide Volkswagen* found lacking "those affiliating circumstances that are a necessary predicate to any exercise of state court jurisdiction," *Id.* at 295, 100 S.Ct. at 566, it made clear that it was not retreating from its earlier holdings in *International Shoe* and *McGee* :

When a corporation "purposely avails itself of the privilege of conducting activities within the forum State," *Hanson v. Denckla*, 357 U.S., at 253 [78 S.Ct. at 1239], it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State. Hence if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State. Compare *Gray v.*

*American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961). *Id.* 444 U.S. at 297, 100 S.Ct. at 567.

Implicit in the opinion of the district court is a finding that Greenhill had at least indirectly sought to serve the market for its products in Ohio and that, having delivered them into "the stream of commerce" it must reasonably have anticipated that they would be sold in Ohio. There was evidence that Greenhill was familiar with K-Mart's operations as a nationwide retailer in the United States. In addition this was a very large order and the shipping instructions required that Greenhill divide the order and ship the pliers to three different United States ports of entry—Newark, N. J., Savannah, Ga. and Longview, Wash. The district court's conclusion is also consistent with decisions of this and other courts applying the "stream of commerce" analysis in *World-Wide Volkswagen.* See *Poyner v. Erma Werke GMBH,* 618 F.2d 1186 (6th Cir.), *cert. denied sub nom. Insurance Co. of North America v. Poyner,* 449 U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980); *Stabilisierungsfonds Fur Wein v. Kaiser,* 647 F.2d 200 (D.C.Cir.1981); *Oswalt v. Scripto Inc.,* 616 F.2d 191 (5th Cir. 1980).

### III.

■ Greenhill contends that even if the district court could constitutionally exercise jurisdiction in this case, it erred in doing so because of the agreement of the parties to submit all disputes to arbitration in Japan. In addition to the arbitration clause previously quoted, the Sales Note provided, "If there is a discrepancy in the contents of the Sales Note and the Buyer's Order [ ] or his Order Sheet, the Buyer should obtain the Seller's acceptance on the discrepancy, otherwise this Sales Note will be considered the correct version." K-Mart did not obtain Greenhill's "acceptance on the discrepancy." Thus, if arbitration were required the Sales Note would control, and the dispute would necessarily be referred to the Japan Commercial Arbitration Association in Osaka or Toyko. However, the district court found no inconsistency in the documents with respect to the proper forum for an indemnification action.

Though the matter is not entirely free of doubt, we cannot say that the district court's construction of the written documents is erroneous. As has been pointed out, both parties used printed forms in this transaction, and the forms are not complementary. Neither document expressly limits its application of its arbitration provision to disputes concerning "commercial quality." Nevertheless, the principal concern of the printed conditions on both documents is with such commercial matters as quality, quantity, packaging, inspection, licenses and duties, manner of shipment and payment. These are all matters which touch upon commercial practices related to international trade. No such dispute arose between Greenhill and K-Mart with respect to the pliers. The dispute which did arise—a claim against K-Mart by a user of a pair of pliers—was covered by the unambiguous language of the indemnity clause. Greenhill conceded that the district court had jurisdiction over the original action between Noel and K-Mart. When it was determined in that action that the product furnished by Greenhill was defective and that the plaintiff's injuries were proximately caused by the defect, the absolute language of indemnification controlled and the district court properly directed a verdict on the third-party complaint.

■ Greenhill also argues that, even if the indemnification claim was not subject to arbitration, its Sales Note required that "the case will be settled in Osaka." In effect, it contends this was a valid "choice of forum" which K-Mart acceded to by not obtaining its acceptance of a changed provision. Of course, the quoted language is from the paragraph of the Sales Note which deals with arbitration. It has no logical relationship to the subject of indemnification. This court is not unmindful of the deference which is required to be given to forum selection clauses negotiated and agreed to by contracting parties. *See The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *cf.*

*Piper Aircraft Co. v. Reyno,* —— U.S. ——, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). As we have indicated in discussing the arbitration clauses of the two documents, if the issue in the present case involved a dispute between K-Mart and Greenhill concerning performance of the sales contract, an agreement to settle the matter in Japan would be enforced. The contract was made in Japan following negotiations there. However, K-Mart made no claim that Greenhill breached the contract of sale. Since the liability which K-Mart sought to enforce against Greenhill arose from a claim of bodily injury which was tried to judgment in the district court, that court was not required to surrender jurisdiction to a Japanese court to try the indemnification claim. The language relied upon by Greenhill does not convince us that it was the intent of the contracting parties that such a claim, based on the judgment of a court in Ohio which concededly had jurisdiction over the underlying personal injury claim, was required to be submitted to a Japanese forum.

## IV.

In its appeal K-Mart asserts that the district court erred in denying its motions for judgment notwithstanding the verdict and for a new trial. Greenhill joins in all of K-Mart's arguments on these issues.

### A.

■ K-Mart maintains that it was entitled to a directed verdict on the defense of misuse. In a confusing argument K-Mart contends it established that Noel was not using the pliers as they were intended to be used, and that this is an absolute bar to recovery for his injury. This is a specious argument. A manufacturer or seller may not determine the "intended use" of a product and then escape liability for injury resulting from a different use even though the product is defective and the use by the consumer is foreseeable. Noel was using the pliers to stretch a brake spring while attempting to re-attach it to the brake drum. The evidence did not establish that using pliers, without any warning of a lim-

ited use, for the purpose of gripping and pulling a wire, was misuse as a matter of law. In stretching the wire Noel was gripping the pliers in his left hand only at the time they fractured. There was expert testimony that pliers should be capable of withstanding the pressure applied by one human hand, and that overloaded pliers should bend, not fracture. Expert testimony for the plaintiff was that the fracture resulted from improper heat treatment of metal during the manufacturing process. The expert witnesses for the defendant agreed that the fracture was caused by an overload. Witnesses for both parties testified to flaws or irregularities in the metal which might have reduced the load capacity of the pliers. Viewing the evidence and all inferences most favorably to the plaintiff, *Morelock v. NCR Corp.,* 586 F.2d 1096, 1104–05 (6th Cir. 1978), *cert. denied,* 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979), the defendant was not entitled to a directed verdict. The issue of misuse presented a question of fact for the jury. *National Polymer Products, Inc. v. Borg-Warner Corp.,* 660 F.2d 171, 178 (6th Cir. 1981); *Rimer v. Rockwell International Corp.,* 641 F.2d 450 (6th Cir. 1981). Thus, the district court did not err in denying K-Mart's motion for judgment notwithstanding the verdict.

### B.

■ In a related argument K-Mart contends that it is entitled to a new trial because the district court committed error in its jury charge. K-Mart requested an instruction which defined misuse as "use of the product in a manner for which the product is not adapted and not reasonably foreseeable to defendant." The district court refused the instruction, noting that there had been no modification of the pliers and expressing the opinion that use of the word "adapted" might be confusing to the jury. The court's instructions contained the following language:

A product is defective if it is not of good and merchantable quality, fit and safe for its ordinary intended use. How-

ever, a product is not defective or unreasonably dangerous merely because it is possible to be injured while using it.

\* \* \* \* \* \*

As a defense to plaintiff's claim that his injury was caused by the defective condition of the pliers, the defendant contends that the plaintiff's injury was proximately caused by his misuse of the tool.

A seller is entitled to expect a normal use of its product. You must determine whether plaintiff was using the pliers at the time of the accident in a manner that was reasonably foreseeable to the defendant.

The plaintiff's particular use of the pliers may have been reasonably foreseeable even if defendant did not specifically intend that use. However, if plaintiff's injury occurred because he used the pliers in a manner that was not reasonably foreseeable to the defendant, then the plaintiff cannot recover.

K-Mart's proposed instruction was taken verbatim from Devitt and Blackmar, *Federal Jury Practice and Instructions*, § 82.10 which referred to *Moomey v. Massey-Ferguson, Inc.*, 429 F.2d 1184 (10th Cir. 1970). However, the text of the opinion affirming the judgment of the trial court in *Moomey* stresses only foreseeability, with no mention of "adapted." "The jury was told that if at the time of injury Moomey was using the tooth in a manner *not reasonably foreseeable* to Massey Ferguson, then Moomey could not recover." *Id.* at 1188 (emphasis added). In 1 Frumer & Freidman, *Products Liability*, § 15.01, foreseeability is identified as the proper test of liability where misuse is claimed. We find no error in the district court's instruction on misuse in the present case.

### C.

K-Mart claims error in the district court's denial of its motion to exclude the testimony of Noel's expert witness, metallurgist Glen Meyrich. The final pretrial order required notice to the court and opposing counsel at least three days prior to trial of the names, addresses and general subject matter of the testimony of any witnesses not previously identified. The pretrial order limited the plaintiff to two expert witnesses. Five days before the scheduled trial date the plaintiff filed a "Supplement to Final Pretrial Order," with a copy to opposing counsel, advising that Dr. Meyrich would be called as an expert witness. A resumé of Dr. Meyrich's qualifications was attached and a general statement of the subject matter of his testimony was included. The plaintiff presented two experts at the trial, a physician and Dr. Meyrich.

It is clear that the plaintiff complied with the pretrial order. Rule 16, F.R.Civ.P., provides that such an order "controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice." The district court considered K-Mart's motion *in limine* to exclude Dr. Meyrich as a witness and determined that it should be denied. After the trial, when Dr. Meyrich's testimony had been heard, the district court concluded, in denying a new trial, that K-Mart had not been unfairly prejudiced in this regard. We find no abuse of discretion in denying the two motions and permitting the witness to testify.

The judgment of the district court is affirmed on appeal and cross appeal. The plaintiff Noel will recover his costs.