COPIERS TYPEWRITERS
CALCULATORS, INC.

v.

TOSHIBA CORPORATION, et al.

Civ. A. No. M–81–3052.

United States District Court,
D. Maryland.

Nov. 30, 1983.

Michael D. Berman (argued), Paul D. Bekman (on the brief), and Kaplan, Hey-

man, Greenberg, Engelman & Belgrad, P.A., Baltimore, Md., Roger K. Zuker, Camp Springs, Md., Sylman I. Euzent, Gaithersburg, Md., for plaintiff.

John J. Witmeyer, III, (argued), Michael L. Anania, and Ford, Marrin, Esposito & Witmeyer, New York City, Martin S. Protas and Protas, Kay, Spivok & Protas, Rockville, Md., for defendants Toshiba Corp., Toshiba America, Inc., and Ronald Sid Reisch.

Richard G. McAlee and Gordon, Feinblatt, Rothman, Hofferberger & Hollander, Baltimore, Md., J. William Hayton and Bell, Boyd & Lloyd, Chicago, Ill., for defendant Underwriters Laboratories, Inc.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

On November 30, 1981, the plaintiff, Copiers Typewriters Calculators, Inc. (CTC) (then known as Robey's Office Machines, Inc.), filed suit against the defendants, Toshiba Corporation (Toshiba), Toshiba America, Inc. (TAI), Ronald Sid Reisch (Reisch), and Underwriters Laboratories, Inc., alleging breach of contract; intentional and negligent faulty design, manufacture, assembly and testing; breach of express and implied warranties; negligent failure to warn; fraudulent and negligent misrepresentation; fraudulent non-disclosure of facts; deceit in conduct; and commercial revocation of previous agreements arising from the sale of Toshibafax photocopying machines to CTC, a dealer in such products. (Paper No. 1).

On April 1, 1982, Toshiba and TAI filed a joint motion to dismiss and for partial summary judgment. (Paper No. 14). Leave was granted the plaintiff to conduct discovery on the issues raised by this motion before responding to the motion. (Paper No. 19). On July 14, 1982, the defendant Reisch filed a Motion to Dismiss (Paper No. 33), and discovery was conducted on the issues raised by that motion as well. After extensive discovery, the plaintiff filed its opposition on August 22, 1983 to the Toshiba-TAI Motion to Dismiss (Paper No. 82),

and to the Reisch motion as well. (Paper No. 88). The defendants have replied. (Paper Nos. 92 & 94). A hearing was held on November 18, 1983.

I. *Supplemental Motion to Strike Affidavits of Koichiro Nakamoto, Tadashi Wakayama and Nobuyuki Horiuchi*

On October 4, 1983, this court reviewed the plaintiff's Motion to Strike the affidavits of Koizumi, Reisch and Kitagawa. (Paper No. 102). Thereafter, on October 7, 1983, the plaintiff filed a supplemental motion to strike the affidavits of Nakamoto, Wakayama, and Horiuchi because such affidavits were made on knowledge and belief. (Paper No. 103). Toshiba responded by stating that (1) the contents of the affidavits demonstrate that the statements were made from personal knowledge of the facts, (2) Mr. Horiuchi states he has personal knowledge of the facts, he and Mr. Wakayama state that they are competent to testify, and Mr. Nakamoto is a lawyer expressing his opinion on Japanese law, and (3) the wording of the cover page on which the phrase "knowledge and belief" is used is the required format and the mandatory wording required by the United States Consul in order to have the affidavits attested to by him. (Paper No. 113).

In reply, the plaintiff states that an alternative to attestation by the United States Consul was available as set forth in 28 U.S.C. § 1746(1), and additionally contends in support of the Motion to Strike that (1) the Horiuchi affidavit is defective because paragraph 8 fails to demonstrate actual knowledge of the facts, (2) the Nakamoto affidavit cannot be relied upon because notice of an intent to rely on the law of a foreign nation was not given, and (3) Mr. Nakamoto was not identified as an expert in Reisch's Answers to Interrogatories. (Paper No. 120). Toshiba has countered. (Paper No. 121).

As stated by this court in its October 4, 1983 Order, evidence that the affiant has knowledge of the facts contained in his affidavit need not be contained in the traditional litany of same, but can be dem-

onstrated from the face of the affidavit itself. *McLaughlin v. Copeland*, 435 F.Supp. 513, 519 (D.Md.1977). Since the cover page of attestation before the United States Consul in Japan has a mandatory format suggesting a lack of personal knowledge on the part of the affiant, the content of the affidavit itself is more important than usual in a determination of whether it meets the requirements of Rule 56(e). If only a portion of the affidavit meets such requirements, the entire affidavit need not be stricken, but only those portions which are deficient. *Id.*

■ Nobuyuki Horiuchi is the Senior Manager of the Administration and Planning Department of the International Operations-Consumer Products Division of Toshiba. (Horiuchi Affidavit ¶ 1). He states that he has personal knowledge of whether Toshiba had any offices in the United States from January 1, 1976 to the present. (*Id.* ¶ 1). In addition, he states at the end of the affidavit that he has personal knowledge of all the facts contained in the affidavit and that he is competent to testify thereto. (*Id.* ¶ 13). These statements are sufficient to demonstrate knowledge and competence to testify to all of the facts contained in the affidavit, with the exception of the third sentence in paragraph 8 where he indicates that he has been advised that the service stations in Exhibit E are companies doing business with TAI. Because this sentence is the product of advice from others, the third sentence in paragraph 8 of the Horiuchi affidavit is hereby stricken.

Tadashi Wakayama is the Manager of the Americas Group for the International Operations-Electronic Components Division of Toshiba. In his affidavit, Wakayama indicates that he has personal knowledge regarding the goods shipped by Toshiba to destinations in the State of Maryland as identified in Exhibit A of the plaintiff's Reply Brief to the Toshiba-TAI Motion to Dismiss. (Wakayama Affidavit ¶ 1). He attests to his competence in paragraph 7 of the affidavit. Because all the facts sworn to by him relate to matters as to which he

has sworn he has personal knowledge, the motion to strike this affidavit is denied.

■ Mr. Nakamoto, as has been stated, is a Japanese lawyer whose affidavit contains statements concerning Japanese law. Although the plaintiff objects because Mr. Nakamoto was not identified in Reisch's Answers to Interrogatories which requested the identification of all experts, those interrogatories were not directed to the defendants which are submitting the affidavit of Mr. Nakamoto. The plaintiff's other objection that notice of the use of foreign law was not given in accordance with Rule 44.1, Fed.R.Civ.P., need not be reached because the contents of the Nakamoto affidavit, relating to an explanation of Japanese law, is not relied upon by the defendant Toshiba in either its original motion to dismiss or its reply, and is not necessary to resolve the contentions made by Toshiba.

## II. *Motion to Dismiss Defendant Toshiba for Lack of Personal Jurisdiction*

### A. *Background Facts*

In the case *sub judice*, Toshiba, a Japanese corporation, manufactures, among other goods, photocopiers. (Paper No. 1, at 2; Kitagawa Affidavit ¶ 7). Toshiba is not licensed to do business in Maryland. (Kitagawa Affidavit ¶ 2). Toshiba sells its photocopiers FOB Japan to TAI, a wholly owned New York subsidiary. (Reisch Affidavit ¶ 6; Kitagawa Affidavit ¶ 3; Wakayama Affidavit ¶ 1). TAI is a New York corporation with its principal office in Wayne, New Jersey. (Reisch Affidavit ¶ 4).

Toshiba does not own or lease property in Maryland, has no bank accounts in Maryland, has no employees in Maryland, and has no offices, warehouses, branches or places in which it regularly conducts business in Maryland. (Kitagawa Affidavit ¶¶ 3–6). Mr. Horiuchi's affidavit also reveals that Toshiba does not conduct business from TAI facilities, has no common directors with TAI, and does not maintain

any joint bank accounts with TAI. (Horiuchi Affidavit ¶ 5).

The plaintiff asserts that this court has personal jurisdiction over Toshiba, which has its principal place of business in Tokyo, Japan (Paper No. 1, at 12), (1) because Toshiba placed its goods into the stream of commerce intending to sell those goods in the United States, (2) because, together with the acts of its wholly owned subsidiary, it was transacting business in Maryland, (3) because Toshiba derived substantial revenue from the sale of its goods in the State of Maryland where an alleged tortious injury occurred, and finally (4) because Toshiba has contracted to act as surety for property within the State of Maryland.

### B. *World Wide Volkswagen Decision*

In *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Supreme Court examined whether a regional distributor, which marketed cars in only three eastern states, and a car dealer located and doing business in New York were subject to the Oklahoma court's exercise of personal jurisdiction in a case where a car sold by the defendant dealer was involved in an accident in Oklahoma. Because the Court concluded that the regional distributor and the retail dealer, both New York corporations, had no reasonable expectation that they would be subject to Oklahoma's adjudication of an incident involving the car arising in Oklahoma, the defendant was not subject to the jurisdiction of the Oklahoma court. The Court stated that foreseeability alone was insufficient to meet the minimum contacts requirement, but continued, stating,

> "[t]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."

*World Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567 (citations omitted). Although the manufacturer and the importer of the automobile had not moved to dismiss, the Supreme Court observed,

> "Hence if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State."

*Id.* at 297–98, 100 S.Ct. at 567 (citation omitted).

Because of the increase in the production of goods for, and their distribution in, international markets, courts have increasingly been confronted with the question of whether a manufacturer, located in another country, is susceptible to being sued in the United States in a particular State. Applying the dictum in *World Wide Volkswagen*, 444 U.S. at 297–98, 100 S.Ct. at 567–68, some courts have exercised personal jurisdiction over alien manufacturers which have placed their goods in the stream of commerce in the United States. *See, e.g., Nelson v. Park Industries, et al.*, 717 F.2d 1120 (7th Cir.1983); *Hedrick v. Daiko Shoji Co.*, 715 F.2d 1355 (9th Cir.1983); *Noel v. S.S. Kresge Co.*, 669 F.2d 1150 (6th Cir. 1982); *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.*, 647 F.2d 200 (D.C.Cir.1981); *Oswalt v. Scripto, Inc.*, 616 F.2d 191 (5th Cir.1980); *United States v. Toyota Motor Corp.*, 561 F.Supp. 354 (C.D.Cal.1983); *Graco, Inc. v. Kremlin, Inc.*, 558 F.Supp. 188 (N.D.Ill. 1982); *Rockwell International Corp. v. Costruzioni Aeronautiche*, 553 F.Supp. 328 (E.D.Pa.1982); *Bulova Watch Co. v. K.*

*Hattori & Co.,* 508 F.Supp. 1322 (E.D.N.Y. 1981); *Cascade Steel v. C. Itoh & Co.,* 499 F.Supp. 829 (D.Or.1980); *Lasky v. Continental Products Corp.,* 569 F.Supp. 1225 (E.D.Pa.1983).

Other courts, after examining the factors set forth in the Supreme Court decisions, have concluded that exercising jurisdiction over an alien manufacturer would not comport with Due Process. *Samuels v. BMW of North America, Inc.,* 554 F.Supp. 1191 (E.D.Tex.1983); *Cascade Steel,* 499 F.Supp. 829; *Batzer v. Kawasaki Motor Corp.,* No. R–80–1591 (D.Md., Dec. 15, 1981). *See also Talbot Tractor Co. v. Hinomoto Tractor Sales, U.S.A.,* 703 F.2d 143 (5th Cir.1983).

### C. *Analytical Framework*

■ In a diversity case, the power of a federal court to assert personal jurisdiction over a nonresident defendant depends on two considerations: (1) whether the applicable state statute confers jurisdiction, and (2) whether the service and the attendant exercise of personal jurisdiction comport with the constitutional requirements of the Due Process Clause. *Snyder v. Hampton Industries, Inc.,* 521 F.Supp. 130, 135 (D.Md.1981); *Craig v. General Finance Corp. of Illinois,* 504 F.Supp. 1033 (D.Md. 1980).

The Maryland Long Arm Statute, *Md. Cts. & Jud.Proc.Code Ann.* § 6–103, defines the circumstances in which the state courts and, in diversity cases, federal courts may exercise jurisdiction over a person. In this suit, the plaintiff has asserted that jurisdiction exists over Toshiba under subsection (b)(1), (b)(4), or (b)(6) of the Maryland Long Arm Statute, set forth below:

"(a) *Condition.*—If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.

(b) *In general.*—A court may exercise personal jurisdiction over a person, who directly or by an agent:

(1) Transacts any business or performs any character of work or service in the State; . . .

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing."

■ The Maryland Court of Appeals has stated that the intent of the legislature in enacting the long arm statute was to expand the exercise of personal jurisdiction to the extent permitted by the Due Process Clause. *See Snyder,* 521 F.Supp. at 136 (and cases cited therein). Not all of the subsections of the long arm statute are coterminous with due process, however. *Beaty v. M.S. Steel Co.,* 401 F.2d 157 (4th Cir.1968), *cert. denied,* 393 U.S. 1049, 89 S.Ct. 686, 21 L.Ed.2d 691 (1969). Subsections (b)(3) and (b)(4) were intended by the legislature to allow the exercise of personal jurisdiction within more narrow limits than the Due Process Clause would tolerate. *Craig,* 504 F.Supp. at 1036. With the exceptions of subsections (b)(3) and (b)(4), in Maryland the two-fold analysis mentioned above merges since "both the reach of the Maryland statute and the constitutional validity of the exercise of jurisdiction pursuant thereto are measured by the same standard." *Carter v. Massey,* 436 F.Supp. 29, 33 (D.Md.1977), *quoted in Batzer v. Kawaski Motor Corp.,* No. R–80–1591 at 3 (D.Md., Dec. 15, 1981).

■ The Due Process Clause obviously limits the extent to which a federal district court can exercise personal jurisdiction over an individual defendant. *Kulko v. California Superior Court,* 436 U.S. 84,

98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). Only where minimum contacts between the defendant and the forum state exist may a court exercise personal jurisdiction over a nonresident. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The determination that these contacts exist protects the defendant from distant and inconvenient litigation and ensures that the states do not reach beyond the limits imposed by their status of co-equals in this judicial system. *World Wide Volkswagen Corp.*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490. Whether the defendant's contacts with the forum state are sufficient not to offend "traditional notions of fair play and substantial justice," *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158, *quoting Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940), and to require the defense of a particular suit is determined by examining all the circumstances of a particular case. *Insurance Co. of North America v. Marina Salina Cruz*, 649 F.2d 1266, 1270 (9th Cir. 1981). The minimum contacts requirements under the Due Process Clause are met when "(1) a nonresident defendant performs some act by which it avails itself of the benefits and protections of the forum's laws; (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable." *Hedrick v. Daiko Shoji Co.*, 715 F.2d 1355, 1358 (9th Cir.1983).

After a review of the Supreme Court's decision in *World Wide Volkswagen*, the Ninth Circuit compiled a non exhaustive list of seven factors that are relevant to a determination of whether the exercise of jurisdiction is reasonable.

"(A) the extent of the purposeful interjection into the forum state, ... (B) the burden on the defendant of defending in the forum, ... (C) the extent of conflict with the sovereignty of defendant's state, ... (D) the forum state's interest in adjudicating the dispute, ... (E) the most efficient judicial resolution of the controversy, ... (F) the importance of the forum to plaintiff's interest in convenient and effective relief, ... and (G) the existence of an alternative forum."

*Marina Salina Cruz*, 649 F.2d at 1270 (citations omitted). *See World Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564; *Carter*, 436 F.Supp. at 33.[1]

### D. Application

Toshiba performed a forum-related act when it manufactured copiers which it knew were destined for sale in the United States. *Hedrick*, 715 F.2d at 1358. That this cause of action arises out of the performance of the copiers manufactured by Toshiba and received by the plaintiff for resale in the United States, in Maryland, is undisputed. (Paper No. 82, Exh. K). Although Toshiba produces its copiers only in Japan, it manufactures for a world wide market; more particularly, it manufactures for, and intends to service, the United States market. Toshiba's direct shipments of its products to more than half of the states in the United States, including Maryland, reveal an expectation of sales throughout the United States as a whole. *Id.*, Exh. B. The nationwide structure of Toshiba's United States sales subsidiaries reinforces that conclusion. *Id.*, Exh. B–34, at 8.

 By its efforts to serve the United States market, by placing its goods in

---

1. All of the factors enumerated by the Ninth Circuit in their minimum contacts analysis are encompassed by the factors identified by this court in *Carter* for a determination of whether requirements of fairness and substantial justice for purposes of exercising personal jurisdiction have been met.

"1. The nature and quality of the defendants' contacts with the forum state,

2. The quantity of defendants' contacts with the forum state,

3. The relationship, if any, of the cause of action to the contacts of the defendants with the forum state; and to a lesser extent,

4. The legitimacy of the interest of the forum state in providing a forum for the cause of action asserted, and

5. The convenience of the parties."

*Carter*, 436 F.Supp. at 33 (citations omitted).

the stream of commerce which will supply that market, and by welcoming the sales and the revenue derived therefrom, Toshiba evidences its intent that its goods reach the states of the United States, in which its goods are sold. It should reasonably anticipate being haled into court in those states where sale of those goods ultimately causes damage to someone in those states. *World Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567; *Hedrick,* 715 F.2d at 1358; *Noel,* 669 F.2d at 1150; *Oswalt,* 616 F.2d 191; *Cascade Steel,* 499 F.Supp. 829. As the *dicta* in *World Wide Volkswagen* makes clear, Due Process does not require that the contacts the alien manufacturer has with the forum state be directly created and maintained by the manufacturer, if the manufacturer indirectly, but intentionally, introduces the goods into a market that includes the forum state, since the contacts then are not merely fortuitous, but are intended. *World Wide Volkswagen,* 444 U.S. at 297–98, 100 S.Ct. at 567–68. Therefore, the fact that Toshiba chose to sell its goods to a wholly owned subsidiary does not mean that Toshiba is insulated from jurisdiction in the states in which its products are sold. *See Noel,* 669 F.2d 1150 (sale of goods by Japanese manufacturer to K-Mart, an entity it knew to be a nationwide marketing company, resulted in existence of jurisdiction); *Kaiser,* 647 F.2d 200 (sale by Australian manufacturer to separate and distinct importer did not insulate manufacturer from jurisdiction); *Oswalt,* 616 F.2d 191 (sale by Japanese manufacturer to separate importer did not insulate manufacturer from jurisdiction).

This cause of action, in summary, arises out of the performance of the copiers manufactured by Toshiba for sale in the United States, including Maryland, and Toshiba purposely availed itself of the privilege of selling within the forum, thus invoking the benefit and protection of the forum's laws.

An application of the factors set forth in *Carter, World Wide Volkswagen,* and *Marina Salina Cruz* to the facts in this case indicates that it would be reasonable to subject Toshiba to the jurisdiction of a Maryland court. The extent of the purposeful interjection by Toshiba of its products into Maryland is amply demonstrated by the substantial volume of the alleged deficient copiers in this state. Roughly half a million dollars' worth of copiers were received by the plaintiff. (Paper No. 82, Exhs. K & H). In addition to the goods out of which this suit arises, substantial shipments of other Toshiba goods are sold in this forum. (*Id.* Exhs. A & C). The evidence indicates that Toshiba does not totally abandon its products once they are produced and that further contact with them is expected by Toshiba after they are sold in the United States. At least one of the advertisements for Toshiba products was printed in Japan, indicating possible concern for the advertisements of its products in the United States. (*Id.* Exh. E–1). The limited warranty of the Toshiba manufactured copiers states that an inquiry regarding the complete warranty can be made to either "*the manufacturer* or any Toshiba dealer." *Id.,* Exhs. E–2 & E–3 (emphasis added). Finally, use of a manufacturer's logo or trademark by its subsidiaries, as in the present case, evidences an expectation and hope by the manufacturer of customer identification and quality recognition of a Toshiba manufactured product. (*Id.* Exhs. E1–4, F–1, G1–3).

Second, while Toshiba's burden in defending an action in Maryland is more than minimal, the plaintiff's burden of suing Toshiba in Japan exceeds that of Toshiba defending a suit here. Toshiba is represented by the same counsel which represents TAI. Moreover, Toshiba is set up to do business internationally, and depends in part on foreign consumption. Forcing Toshiba, an international corporation, to defend a suit in Maryland is patently less burdensome than requiring the plaintiff, a local Maryland dealer, to do the converse. *See Developments-Jurisdiction,* 73 Harv. L.Rev. 909, 929 (1960), *quoted in Goff v. Armbrecht Motor Truck Sales, Inc.,* 284 Pa.Super. 544, 426 A.2d 628 (1980). Moreover, modern means of communication and transportation, which make supplying products to a distant forum less burdensome,

also diminish the burden of defending a lawsuit abroad. *Marina Salina Cruz*, 649 F.2d at 1271 (and cases cited therein).

Although the sovereignty conflicts between two countries are potentially a greater barrier than such conflicts between two states, *Id.* at 1272, Toshiba has demonstrated no conflict with any of the sovereign interests of Japan which would be involved in the event jurisdiction is found to exist in this case. *Hedrick*, 715 F.2d 1355.

 In assessing reasonableness, the court must also consider "the interest of the forum state and of the plaintiff proceeding with the cause in plaintiff's forum of choice." *Kulko*, 436 U.S. at 92, 98 S.Ct. at 1697. Maryland has an interest in the protection of its residents from economic injury caused by nonresidents. While it is true that *World Wide Volkswagen*, and a number of cases following its lead have involved a cause of action for tortious personal injury, rather than economic injury, and in these cases, arguably, the state's interests were greater because of the individual's pain and the potential for state support of these citizens, this distinction does not, as Toshiba contends, automatically require that this forum dismiss the alien manufacturer. The type of injury impacts the nature and quality of the interest involved but does not automatically result in a denial of jurisdiction. *See Kaiser*, 647 F.2d 200 (trademark infringement); *Cascade Steel*, 499 F.Supp. 829 (antitrust injury). Moreover, while the forum state's interest, where the injury involved is to person rather than property, may be more apparent, states are certainly concerned about protecting the economic interests of businesses located within them when those businesses produce both jobs for forum residents and revenue for the state.

Maryland appears to be the most convenient forum for resolving this dispute because many of the witnesses are here, and the claim arises from the performance of these copiers sold in this State. Availability of the Maryland forum is important for CTC's chances for convenient and effective relief. Finally, while a Japanese forum may be available, this court cannot say that it represents a practical alternative for the allegedly injured plaintiff.

 Therefore, this court concludes that a balancing of the factors outlined above indicates that the exercise of jurisdiction over Toshiba under subsection (b)(1) of the long arm statute by a federal district court in Maryland is reasonable and proper.

### III. *Inadequate Service on Defendant TAI*

The plaintiff served TAI through service on John P. Hederman, Esq., TAI's registered agent in New York. At the time of service, however, Mr. Hederman was deceased. (Koizumi Affidavit ¶¶ 2–4). Therefore, because, under well established agency law, the death of the agent extinguishes the agency, *see In re Chinese Merchants Bank*, 151 Misc. 425, 272 N.Y.S. 764, 769 (Sup.Ct.1934), TAI moved to dismiss this action by asserting lack of proper service. The plaintiff asserts that such service was proper or, in the alternative, that TAI should be estopped from denying the validity of their representations that Hederman continued to be the registered agent of TAI.

Since the plaintiff has subsequently properly served TAI through its registered agent in Maryland, The Corporation Trust, Inc., the resolution of the above issue is no longer necessary. (Paper No. 90).

### IV. *Failure to State a Claim*

Toshiba moves to dismiss Counts I–V and VII–XII as to itself, and TAI moves to dismiss Counts II–V and VII–XI as to itself. Toshiba moves to dismiss Count I, breach of oral contract, Count IV, breach of express warranty, and Count XII, Commercial Revocation pursuant to § 2–608(1)(a), because of a lack of privity between it and the plaintiff. CTC contends that privity is not required, but that, if it is, privity exists because of the agency relationship which does or may exist between Toshiba and TAI. Both TAI and Toshiba also assert that the statements set forth in

Count IV are, as a matter of law, not express warranties, and that Count IV is improperly pled.

Counts II, III and VII, TAI and Toshiba assert, should be dismissed because the doctrine of strict liability in tort does not encompass claims of mere economic injury. TAI and Toshiba move to dismiss Count V, asserting that a claim of implied warranty for a particular purpose cannot be made by a dealer, one who is not the ultimate consumer in the chain of distribution. TAI and Toshiba move to dismiss Counts VIII–XI for failure to comply with Rule 9(b).

### A. *Privity of Contract—Counts I, IV & XII*

■ Absent some recognized exception, it is hornbook law that only the parties to a contract can enforce it and that they may enforce it against only the parties to the contract. *See* 2 *Williston on Contracts* §§ 273, 347, at 178–80, 793 (3d ed. 1959 & 1983 Supp.). Therefore, absent some showing by the plaintiff of an exception to this requirement, privity is required for breach of contract claims. The plaintiff relies on the doctrine of agency and the development of statutory law to establish that the oral contract entered into between the plaintiff and TAI also binds Toshiba. (Paper No. 1, ¶ XI). Count IV contains a breach of express warranty claim, and CTC asserts that privity is not required for this particular claim. Count XII contains an assertion by CTC of its right to revoke acceptance of the alleged defective copiers pursuant to *Md.Comm.L.Ann.Code*, § 2–608(1)(a), and the plaintiff reasserts its arguments made with regard to Count IV.

#### 1. *Privity*

Under the Uniform Sales Act of 1957, codified in *Md.Ann.Code*, Art. 83, ¶¶ 53–96 (1957), courts in Maryland recognized that a plaintiff, in order to recover for an alleged breach of warranty, had to plead and establish privity. *Blankenship v. Morrison Machine Co.*, 255 Md. 241, 257 A.2d 430 (1969); *MacKubin v. Curtiss-Wright Corp.*, 190 Md. 52, 57 A.2d 318 (1948).

"Privity was deemed necessary not because the cause of action sounded in contract, but because it was necessary to establish a direct contractual relationship in order to create a warranty and the concomitant duty." *Butcher v. Robertshaw Controls Co.*, 550 F.Supp. 692, 714 (D.Md.1981).

The General Assembly of Maryland, by subsequent legislation, virtually eliminated the requirement of privity in actions for damages for personal injury grounded on breach of an express or an implied warranty. *Md.Comm.L.Ann.Code*, § 2–318. The Maryland Court of Appeals stated, however, subsequent to that legislative change:

"[p]rivity of contract remains an essential ingredient, however, in a breach of express warranty action not involving personal injury, because privity between the plaintiff and defendant is requisite to maintain a contract action unless the plaintiff is either a donee beneficiary or a creditor beneficiary."

*Addressograph-Multigraph Corp. v. Zink*, 273 Md. 277, 280, 329 A.2d 28 (1974).

The plaintiff asserts that language in section 2–314(1)(b), of the *Md.Comm.L. Ann.Code*, eliminates the former requirement of privity for breach of an express warranty without an allegation of personal injury. *See* Freeman & Dressel, *Warranty Law in Maryland Product Liability Cases: Strict Liability Incognito?*, 5 U.Balt.L.Rev. 47 (1975). Section 2–314(1) states:

"§ 2–314 Implied warranty; merchantability; usage of trade

(1) Unless excluded or modified (§ 2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale. Notwithstanding any other provisions of this title

(a) In §§ 2–314 through 2–318 of this title, 'seller' includes the manufacturer, distributor, dealer, wholesaler or other middleman or the retailer; and

"(b) Any previous requirement of privity is abolished as between the buyer and the seller in any action brought by the buyer."

Subsection (1)(b) of this section, CTC asserts, evidences the legislature's intent to eliminate the requirement of privity for *any action* brought by the buyer, including any claim of breach of express warranty. This court cannot agree.

First, it is well established that a statute should be interpreted as a whole. *Howard County Ass'n for Retarded Citizens, Inc. v. Walls,* 288 Md. 526, 418 A.2d 1210 (1980); *Pope v. Pope,* 283 Md. 531, 390 A.2d 1128 (1978). Section 2–314, which subsection (1)(b) modifies, is the statutory enactment of an implied warranty of merchantability, while the statutory enactment regarding express warranties is set forth in § 2–313. Because subsection (b) is contained in § 2–314, this court believes it eliminates the requirement of privity only for claims of breach of implied warranty of merchantability.

Second, the implied warranty of merchantability is set forth in section (1), and it is modified by subsections (a) and (b). Subsection (a) specifically extends the change contained therein to certain other sections of the UCC. Subsection (b) does not. Application by the legislature of a subsection of one section to other sections of the UCC in one instance when the very next subsection is not stated to apply to other sections indicates an intent not to extend the applicability of (1)(b) beyond the type of claim recognized in § 2–314.

Third, if one accepts the plaintiff's contention that subsection (1)(b) applies to the entire statute, the result is that the Maryland legislature eliminated the requirement of privity in *any* action brought by a buyer, and not simply those arising out of breach of warranty and, in so doing, went further than any extension previously granted in case law. The rationale for eliminating the requirement of privity in warranty actions recognized by the courts does not extend to a total elimination of privity in all actions, and this court concludes that the Maryland

legislature did not envision such a sweeping change.

Finally, Official Comment 2 to § 2–313, the express warranty section, states that no indication regarding the extent to which privity is eliminated is contained in the statute, but that such a determination shall be left to developing case law. This expression of purpose indicates that the legislature could not have intended to eliminate all requirements of privity since it was leaving such determinations to the courts.

The plaintiff contends, as do the authors of the law review previously cited, that failing to interpret subsection (1)(b) as eliminating the requirement of privity in any action will render that section superfluous. This court's reading of the statute, however, leads to a different conclusion. Subsection (a) makes clear that a seller can be someone other than a retailer, thus permitting a distributor to sue a manufacturer from which it purchased goods for resale. Subsection (b), however, provides that privity is no longer required for an implied warranty of merchantability to arise. Thus, a buyer may bring a claim for breach of that implied warranty against a party in the chain of distribution other than the party from which he directly purchased the goods. Such a right is not clearly recognized by subsection (a), and subsection (b) clarifies that point.

Finally, the plaintiff urges this court to follow the lead of other courts in stating that a requirement of privity does not exist. Where jurisdiction is based on diversity, as in the present case, this federal court is bound to follow the substantive law of Maryland. Since Maryland does not recognize this exception to the privity requirement when the claim of breach of express warranty does not involve a claim of personal injury, neither may this court. Accordingly, CTC is required to establish privity of contract between itself and Toshiba in order to maintain the claims it asserts in Counts I, IV & XII against Toshiba.

#### 2. *Agency*

It is, as CTC states, axiomatic that a principal may be held liable for damages

arising from a contract entered into on his behalf by his agent. *Strawn v. Jones*, 264 Md. 95, 285 A.2d 659 (1972); *Carroll v. State*, 63 Md. 551, 3 A. 29 (1885). It is also equally clear that the existence of an agency relationship is generally a question of fact for the trier of fact, at least where that relationship is, as here, not created by any written instrument. *P. Flanigan & Sons v. Childs*, 251 Md. 646, 248 A.2d 473 (1967). As the Court of Appeals of Maryland has stated, "it is not for the court to determine the question of agency *vel non*, but if testimony as to the fact of the agency tends to prove the existence of that relation, it should be submitted to the jury, who are the exclusive judges of its weight." *Levine v. Chambers*, 141 Md. 336, 343, 118 A. 798 (1922). In instances where the party asserting the existence of an agency relationship fails to establish a question of material fact, however, the disposition of the issue on motion for summary judgment is appropriate. *E.g., Medical Mutual Liability Insurance Society v. Mutual Fire, Marine & Inland Ins. Co.*, 37 Md.App. 706, 712, 379 A.2d 739 (1977); *Koppers Co. v. S/S Defiance*, 542 F.Supp. 1356 (D.Md.1982), *aff'd*, 704 F.2d 1309 (4th Cir.1983).

■ Both state and federal courts in Maryland have considered the issue of when a corporate veil may be pierced so as to attribute the acts of a subsidiary to a parent corporation. In *Vitro Electronics v. Milgray Electronics, Inc.*, 255 Md. 498, 258 A.2d 749 (1969), the Maryland Court of Appeals held that the acts of a wholly owned subsidiary, the officers of which were the same as those of the parent, the accounting of which was performed by the same accountant as that of the parent and which stocked the parent's component parts on inventory, were not to be attributed to the parent when the record also revealed that the parent and subsidiary maintained separate books, minutes, accounting procedures, and directors' meetings. *See Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925).

In a later case, however, the Maryland Court of Appeals observed that:

"in order to hold the corporate veil inviolate, at least insofar as jurisdiction is concerned, it is necessary as a factual matter that a corporation have some independent reason for existence, other than being under the complete dominion and control of another legal entity simply for the purpose of doing its act and bidding."

*Harris v. Arlen Properties, Inc.*, 256 Md. 185, 200, 260 A.2d 22 (1969). This language has been held to suggest that the strict requirements of *Vitro Electronics* are no longer always necessary to impute the acts of a subsidiary to a parent.

Thus, where the facts establish control of the subsidiary by the parent, agency principles will permit the court to examine the acts of the subsidiary in determining whether personal jurisdiction exists over the parent. *Finance Co. of America v. Bank America Corp.*, 493 F.Supp. 895 (D.Md.1980). The most important inquiry necessary to determine whether, under an agency theory, personal jurisdiction over a parent can be exercised through use of the subsidiary's acts is "whether the significant decisions of the subsidiary must be approved by the parent." *Translation Systems v. Applied Technology Ventures*, 559 F.Supp. 566, 567 (D.Md.1983).

Affidavits supplied by the defendants and their employees in this case reveal that Toshiba and TAI have separate directors and officers, maintain separate corporate records and bank accounts, file separate tax returns, and have separate accountants. (Kitagawa Affidavit ¶ 9; Horiuchi Affidavit ¶ 5). The authorized service stations, including those located in Maryland, (Paper No. 82, Exh. E–1, at 23), are authorized by TAI, not Toshiba. (Friedman Affidavit ¶ 3; Horiuchi Affidavit ¶ 8). The advertisements distributed in Maryland, TAI and Toshiba aver, are those of TAI and are not distributed by Toshiba. (Friedman Affidavit ¶ 4; Koizumi Affidavit ¶ 3; J. Litus, Jr. Affidavit ¶¶ 3–5; Horiuchi Affidavit ¶ 12). Moreover, all materials identify TAI as a subsidiary of Toshiba, and TAI offices are never identified by Toshiba as its of-

fices. (Paper No. 82, Exh. B–34). The offices in California, Massachusetts and Minnesota are TAI offices, not Toshiba offices, as CTC asserts. (Horiuchi Affidavit ¶¶ 3–5). A complete reading of the warranty on Toshiba brand copiers does not reveal that Toshiba has expressly warranted the product. (Paper No. 82, Exh. E–4).

While these materials strongly suggest the lack of any general agency relationship between TAI and Toshiba, the plaintiff has also pointed to some factors which raise a question of fact as to the existence of an agency relationship. While a preliminary determination of the existence of that relationship by the court for purposes of jurisdiction might be appropriate, when the issue of the existence of an agency relationship goes to the merits of a particular claim, any question of fact must be resolved by the jury. The plaintiff points to some managerial personnel moves between Toshiba and TAI (Paper No. 82, Exh. I), that at least one advertisement used by TAI was printed in Japan (*Id.* Exh. E–1), that the warranty permits inquiries to Toshiba as well as to TAI as to the extent of the warranty granted, that TAI uses the Toshiba trademark (Horiuchi Affidavit ¶ 10; Koizumi Affidavit ¶ 4), and that TAI is a wholly owned subsidiary of Toshiba.

■ While these conflicting facts create a question of ultimate fact as to whether a general agency relationship between TAI and Toshiba exists, an agency relationship may also arise out of the specific circumstances underlying the contract at issue in this suit. At this preliminary stage, neither party has supplied the court with the facts surrounding this particular transaction. There is sufficient material in the pleadings, however, to create a question of fact, even if the motion to dismiss is treated as one for summary judgment. Accordingly, Counts I, IV and XII against Toshiba will not be dismissed.

B. *Economic Injury Supporting a Dealer's Tort Action Against a Manufacturer or a Distributor— Counts II, III and VII*

■ The defendants, Toshiba, and TAI, assert that the plaintiff's Second Cause of Action, defective design, manufacture, and assembly; Third Cause of Action, negligent design, manufacture, and assembly; and the Seventh Cause of Action, negligent failure to warn of inferior quality, should be dismissed, because the plaintiff claims only economic loss to which the doctrines of tort law do not allegedly apply, citing *Seely v. White Motor Co.*, 63 Cal.2d 9, 403 P.2d 145, 45 Cal.Rptr. 17 (1965). The plaintiff urges this court to adopt the view expressed in *Santor v. A & M Karagheusian, Inc.*, 44 N.J. 52, 207 A.2d 305 (1965), or, in the alternative, while accepting the *Seely* view, to conclude that where the injury is caused by a sudden and calamitous event, claims of negligence can be maintained.

In 1965, months apart, two landmark opinions of the courts of New Jersey and California were handed down. In *Santor*, the plaintiff purchased carpeting from a third party seller which had been manufactured by the defendant. When unsightly lines appeared on the carpet, the plaintiff sued the manufacturer. The Supreme Court of New Jersey affirmed the trial court's decision that the plaintiff could maintain a breach of implied warranty claim directly against a manufacturer despite the lack of privity between them. In *dicta*, the court went on to declare that a strict tort liability cause of action also existed. The court reasoned that, as with cases involving personal and property injuries caused by defective products, a manufacturer was in a better position to ensure against and to spread the risk of loss of economic losses than were the individual customers. *Id.* 44 N.J. at 64–65, 207 A.2d 305.

Shortly thereafter, the California Supreme Court, in an opinion authored by Chief Justice Traynor, adopted a contrary conclusion. *Seely v. White Motor Co., supra.* In that case, Seely had purchased a truck manufactured by the defendant. After delivery, Seely discovered that the truck bounced, and it eventually overturned. Seely, who was not injured in the

accident, had the truck repaired and ceased making the installment payments on the truck. The truck was repossessed, and Seely sued on theories of breach of express warranty and strict tort liability, seeking damages for the cost to repair the truck, money paid on the purchase price, and for lost profits.

The California Supreme Court, although affirming on the basis of the express warranty, rejected the strict liability cause of action on the ground that the economic loss involved the failure of the product to perform to the level of the party's expectation, a claim grounded essentially in the law of contracts, not of torts. Chief Justice Traynor, in a well reasoned and extensive examination of the relationship of contract law and tort law wrote:

"The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the 'luck' of one plaintiff in having an accident causing physical injury. The distinction rests, rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products. He can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands. A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will. Even in actions for negligence, a manufacturer's liability is limited to damages for physical injuries and there is no recovery for economic loss alone."

*Id.* 63 Cal.2d at 18, 403 P.2d 145, 45 Cal. Rptr. 17.

In cases decided subsequently to *Santor* and *Seely,* a majority of the cases have followed *Seely* in concluding that economic losses are not recoverable in claims sounding in tort law. See *Purvis v. Consolidated Energy Products Co.,* 674 F.2d 217 (4th Cir.1982) (interpreting South Carolina law and citing *Seely* with approval).

Although Maryland courts have not addressed this issue, this court believes, as it has previously stated, that they would "not extend a manufacturer's duty to include liability for mere economic injury caused by negligence." *Excavation Construction Inc. v. Mack Truck, Inc.,* 31 UCC Rptr. 1386, 1391 (D.Md.1981).

█ Plaintiff's second contention is that a line of cases should be followed which have held that where no physical injury is caused by a defective product, but a sudden calamitous event causes product damage, those damages are recoverable in strict liability in tort from the manufacturer. *Cloud v. Kit Manufacturing Co.,* 563 P.2d 248 (Alaska 1977); *Gherna v. Ford Motor Co.,* 246 Cal.App.2d 639, 55 Cal. Rptr. 94 (1966). There is, however, no indication that Maryland courts would accept this conclusion, nor does the complaint allege a sudden calamitous event of the same nature present in those cases cited by the plaintiff, *Cloud* (fire burns down the house); *Gherna* (auto bursts into flames), nor does the plaintiff's complaint allege that any property damage was suffered by the plaintiff.

For all of these reasons, this court concludes that the plaintiff's Second, Third and Seventh Causes of Action shall be dismissed.

### C. *Express Warranties—Count IV*

█ The plaintiff in Count IV alleges that the defendants breached express warranties regarding the quality and performance of the photocopiers. The defendants assert that the identified statements are not, as a matter of law, express warranties. The plaintiff responds that whether such statements are indeed express warranties is a question of fact.

In *Rittenhouse, Winterson Auto Co. v. Kissner*, 129 Md. 102, 98 A. 361 (1916), the Maryland Court of Appeals held that statements of the defendant that the car was "first class, ... as good as new, in sound and first class condition, and that if it was not abused but handled with care, it would last the plaintiff at least four years," were warranties, not mere statements of opinion. *See also Barb v. Wallace*, 45 Md.App. 271, 277, 412 A.2d 1314 (1980).

In the case *sub judice*, CTC alleges that the photocopiers were represented as of high quality, and "required preventive maintenance not more often than every 10,000 copies." The similarity between the representations is sufficient to preclude any determination that, at this stage, without benefit of all the facts and circumstances surrounding these representations, these statements as a matter of law were not express warranties, particularly in light of the cautionary instruction of *Rittenhouse* that such a determination "should ordinarily be left to the jury." *Rittenhouse*, 129 Md. at 205, 98 A. 361. Consequently, Count IV is not dismissed.

### D. *Implied Warranty for a Particular Purpose—Count V*

The defendants assert that, because the meaning of "purpose" in "fitness for a particular purpose" is a purpose which differs from the ordinary purpose for which the goods are used, CTC, a dealer in photocopiers, cannot assert such a claim. According to defendants, only an ultimate user may assert such a claim. The plaintiff disputes this conclusion. Because the court at this stage does not have the facts underlying the plaintiff's allegation, it is impossible to conclude as a matter of law that a dealer could prove no set of facts to support a claim of implied warranty for a particular purpose. Consequently, Count V is not dismissed.

### E. *Rule 9(b)—Failure to Allege Fraud with Particularity—Counts VIII, IX, X and XI*

Rule 9(b), Fed.R.Civ.P., requires that claims based on fraud or mistake must be stated "with particularity." As the late Judge Blair of this court has previously noted:

"Rule 9(b) must be read in conjunction with Rule 8 which contains the provisions creating the 'notice' pleading which is the hallmark of the federal rules. Rule 9(b) requires more than mere notice in cases of fraud; nevertheless, it is not to be construed and applied in a vacuum devoid of Rule 8's existence. *Tomera v. Galt*, 511 F.2d 504 (7th Cir.1975); Wright and Miller, *Federal Practice and Procedure, Civil* § 1298.

Rule 9(b) requires particularity in the pleading of the 'circumstances' of the fraud; that is, the rule requires presentation of the situation out of which the claim arose."

*Oliver v. Bostetter*, 426 F.Supp. 1082, 1089 (D.Md.1977). Where the plaintiff identified the fraud as arising out of inducements to sign a contract settling the lawsuit, Judge Blair concluded that sufficient particularity had been alleged.

In *Butcher v. Robertshaw Controls Co.*, 550 F.Supp. 692, 701–03 (D.Md.1981), Judge Murray of this court held that, where the complaint alleged the defendant, notwithstanding knowledge of numerous accidents, deliberately failed to disseminate warnings of the potential defect from 1955 and every succeeding year thereafter, sufficient particularity existed for purposes of Rule 9(b).

The requirement of "particularity" then does not require the elucidation of every detail of the alleged fraud, but does require more than a bare assertion that such a cause of action exists. In the present case, the plaintiff alleges the statements that were made which were false, but does not indicate when those statements were made. Consequently, the plaintiff is permitted fifteen days from the date of this Order to amend the complaint and identify the circumstances in which the alleged fraudulent statements were made. Failure to so amend will result in the dismissal of these claims.

### V. *Motion to Dismiss Defendant Reisch*

Defendant Reisch asserts that the complaint against him must be dismissed be-

cause his contacts with the State of Maryland are based solely on his contacts which occurred in the course of his duties as a corporate employee. Under the "fiduciary shield" doctrine, the acts of a corporate officer in his corporate capacity will not suffice as the predicate for jurisdiction. *Wilshire Oil Co. v. Riffe,* 409 F.2d 1277 (10th Cir.1969). The plaintiff contends that Maryland has not adopted the fiduciary shield doctrine. *See Groom v. Margulies,* 257 Md. 691, 265 A.2d 249 (1970). *But see Umans v. P.W.P., Inc.,* 50 Md.App. 414, 439 A.2d 21 (1982). The plaintiff asserts that jurisdiction over defendant Reisch is alleged pursuant to sections (b)(1) and (b)(3) of the Maryland Long Arm Statute.[2]

### A. *Section (b)(3)*

In a recent case, the Court of Appeals for the Fourth Circuit, when analyzing the law of South Carolina, examined in considerable detail the foundation for and the development of the "fiduciary shield" doctrine. *Columbia Briargate Co. v. First National Bank,* 713 F.2d 1052 (4th Cir.1983). The plaintiff in that case sued, among others, the First National Bank of Dallas and its Vice President Pearson in the District of South Carolina. The defendant Pearson moved to dismiss on the basis of the "fiduciary shield" doctrine. The district court granted the motion and the Fourth Circuit reversed.

"[U]nder the fiduciary shield doctrine as it has been generally phrased, the acts of a corporate officer or employee taken in his corporate capacity generally do not form the predicate for jurisdiction over him in his individual capacity." *Bulova Watch Co. v. K. Hattori & Co., Ltd.,* 508 F.Supp. 1322, 1347 (E.D.N.Y.1981). This doctrine,

the Fourth Circuit noted, was identified by a federal court in New York. *United States v. Montreal Trust Co.,* 358 F.2d 239 (2d Cir.), *cert. denied,* 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966). In stating the doctrine, however, the *Montreal Trust* court was careful to point out that the question before it was one solely of interpretation of the New York long arm statute which did not extend to the utmost limits of the Due Process Clause. *Id.* at 1056. The doctrine does not apply in cases where, as in South Carolina, the state long arm statute extends to the utmost limits of due process. *Columbia Briargate,* 713 F.2d at 1057.

Permitting a corporate officer to shield himself from jurisdiction through the contention that he performed those acts solely in his corporate capacity, when he could not interpose that same shield as a defense to substantive liability, produces an anomalous result which the due process requirements of fairness do not inherently encompass. In *Columbia Briargate,* the Fourth Circuit concluded that the acts of Pearson in South Carolina were sufficient to establish the requisite minimum contacts. The court went on to hold that, since due process is not implicated in such a situation,

"when a non resident corporate agent is sued for a tort committed by him in his corporate capacity in the forum state in which service is made on him without the forum under the applicable state long-arm statute as authorized by Rule 4(e), he is properly subject to the jurisdiction of the forum court, *provided the long arm statute of the forum state is coextensive with the full reach of due process.*"

*Id.* at 1064 (emphasis in original).

In Maryland, as noted by the *Columbia Briargate* court, *id.* at 1057 n. 12, the state

---

**2.** Sections (a) and (b)(1) and (b)(3) are set forth below:

 (a) *Condition.*—If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.

 (b) *In general.*—A court may exercise personal jurisdiction over a person who directly or by an agent:

 (1) Transacts any business or performs any character of work or service in the State;

 (3) Causes tortious injury in the State by an act or omission in the State; ....

courts have given the long arm statute a different construction than that of the courts of South Carolina. At least with respect to subsections (b)(3) and (b)(4) of the Maryland Long Arm Statute, the courts have concluded that the scope of the statute does not extend to the limits of the Due Process Clause. *Snyder v. Hampton Industries, Inc.*, 521 F.Supp. 130, 136 (D.Md. 1981) (and cases cited therein). In *Umans v. P.W.P. Services, Inc.*, 50 Md.App. 414, 439 A.2d 21 (1982), the Maryland Court of Special Appeals acknowledged the applicability of the fiduciary shield doctrine with regard to Maryland's Long Arm Statute. This statement has been relied on by the federal courts in Maryland as Maryland's construction of its long arm statute. *Cawley v. Bloch*, 544 F.Supp. 133 (D.Md.1982). Under a statute whose reach does not extend to the limits of Due Process, as in *Montreal Trust*, the fiduciary shield doctrine can be applied without contradiction to the conclusions reached by the Fourth Circuit in *Columbia Briargate, supra* at 1057 n. 12.

In the present case, defendant Reisch asserts that all of his contacts were made in a corporate capacity. The plaintiff, which has the burden to demonstrate jurisdictional facts, *Quinn v. Bowmar Publishing Co.*, 445 F.Supp. 780 (D.Md.1978), has failed to demonstrate otherwise, despite conducting lengthy discovery. Consequently, because the fiduciary shield doctrine is recognized in Maryland with respect to section (b)(3), *Umans*, 50 Md.App. 414, 439 A.2d 21, this court concludes that it is without power under that section to exercise personal jurisdiction over defendant Reisch.

**B.** *Section (b)(1)*

■ The plaintiff, CTC, however, also asserts jurisdiction over defendant Reisch under section (b)(1) on the basis of transacting business in this state. This section of the long arm statute, as previously noted, extends to the full limits of the Due Process Clause. *Carter*, 436 F.Supp. at 33. Therefore, the fiduciary shield doctrine, a result of statutory construction of a long arm statute which did not go to the utmost limits of due process, does not apply, *Columbia Briargate*, 713 F.2d at 1055-57, nor does disregarding that doctrine offend an integral part of due process. *Id.* at 1058-65.

■ Since the fiduciary shield doctrine does not apply, under section (b)(1), to preclude consideration of the contacts of defendant Reisch in his corporate capacity with the State of Maryland, this court must then consider whether the total contacts of defendant Reisch with the State of Maryland are sufficient to support an exercise of jurisdiction over him. The burden of establishing minimum contacts to satisfy due process,

> "has been held to be satisfied when there has been 'some act [related to the cause of action alleged] by which the [non-resident] defendant purposely avails [himself] of the privilege of conducting activities within the forum State.' *Hanson v. Denckla, supra*, 357 U.S. [235] at 253, 78 S.Ct. [1228] at 1239 [2 L.Ed.2d 1283 (1958)]."

*Columbia Briargate*, 713 F.2d at 1057.

The contacts of defendant Reisch with the State of Maryland are identified by the plaintiff as (1) attending a trade show in Maryland in 1981 at which time Robert Robey saw Reisch (Paper No. 88, Robey Affidavit ¶ 5); (2) a 1978 visit to Robey's offices to meet Robey's Sales Manager (*id.* ¶ 4; Paper No. 71, Reisch's Additional Response to Interrogatory No. 4), and (3) several telephone calls in late 1978 and early 1979 between defendant Reisch and Robert Robey, some of which were initiated by Reisch and some by Robey (Paper No. 88, Robey Affidavit ¶ 4). The plaintiff asserts that all of these contacts are related to its claims (Paper No. 88, at 5) but has identified only the telephone calls as being specifically related to a cause of action alleged, asserting that the defendant Reisch made express warranties during these calls. (*Id.* at 2-3, 5).

Absent some showing by the plaintiff that defendant Reisch's visits to the State

of Maryland for the trade show and to meet Robey's Sales Manager were in some way related to the claims alleged by the plaintiff in this suit, the court may not assume such a connection. *Md. Cts. & Jud. Proc.* § 6–103(a). A review of the record in this case reveals that the plaintiff has provided no basis for its assertion that these visits were related to its claims, and, therefore, the only contacts to be considered by the court are the telephone calls.

This court has already addressed the sufficiency of such contacts under subsection (b)(1) of the Maryland Long Arm Statute and has held:

> "[t]he better view holds that such contacts [various telephone calls and letters originating from outside the forum state], without more, do not equal transacting business, even when the long arm statute at issue had been declared to reach the outer bounds of due process."

*Craig,* 504 F.Supp. at 1038 (and cases cited therein).

Accordingly, given the limited nature of Reisch's contacts with the State of Maryland, this court is without power under section (b)(1) of the Maryland Long Arm Statute to assert personal jurisdiction over defendant Reisch. He will be dismissed from this suit.

For all the reasons set forth above, it is this 30th day of November, 1983, by the United States District Court for the District of Maryland, ORDERED:

1. That the Motion to Dismiss and for Partial Summary Judgment filed by Toshiba Corporation and TAI be, and the same is hereby, GRANTED in part and DENIED in part as set forth in the body of this Memorandum and Order.

2. That the Motion to Dismiss filed by defendant Reisch be, and the same is hereby, GRANTED.